### JOE SNODGRASS v. THE STATE.

*No. 926.    Decided June 17th, 1896.*

#### 1.  Continuance—Diligence.

Where the process issued for the absent witness was an attachment to T. County, on the 9th of March; another to H. County, on the 20th of August, and another on the 9th of September to H. County; but, it was not shown that the last was ever sent to the proper officer in H. County. Held: That, if defendant had used reasonable diligence between March and September, it occurs to the court, he could have located the witness and had him under process.

### 2.  Seduction—Continuance.

On a trial for seduction, where a continuance was sought for a witness, by whom, it was stated, it was expected to be proved, that before and within a year of the time alleged in the indictment the said witness had had sexual intercourse with the prosecutrix in J. County.  Held:  The allegation is too general; and, moreover, the evidence adduced at the trial shows, that, if the proposed witness should so testify, his testimony would not probably be true; it being shown that the witness had not been seen in the neighborhood where the prosecutrix lived for some two years before the time of the alleged offense.

### 3.  Same—Examination of Prosecutrix as a Witness.

On a trial for seduction, it is competent, on the examination of the prosecutrix, to ask her, "Would you have yielded to the sexual embrace of defendant had it not been on account of his promise to marry you?"  And it was also competent to prove by the prosecutrix, that the defendant was the father of her child then in her arms.

### 4.  Same—Evidence.

On a prosecution for seduction, it was competent to prove by the mother of the prosecutrix, that she overheard a conversation between the parties; said conversation tending to corroborate the prosecutrix as to her engagement with defendant to marry him.  And, it was also competent to prove, that defendant was received at the house of the mother of the prosecutrix on terms of familiarity.

### 5.  Same—Bill of Exceptions to Questions.

Where questions propounded to a witness were evidently for the purpose of laying a predicate to impeach him, the bill of exceptions to the questions, to be sufficient, should show the answer given by the witness, and also show that evidence was adduced upon the predicate of an impeaching character.

### 6.  New Trial—Affidavit of Juror Impeaching His Verdict.

Where one of the jurors, in support of the motion for new trial, made affidavit, that during the consideration of their verdict, he, the juror, heard that one of the principal witnesses for the defendant had been arrested for perjury committed in his testimony in the case; that the matter was mentioned in the jury room; but does not state what was said, or that it had any effect on the jury; that, before he heard it, he had agreed to defendant's conviction, but does not believe he would have agreed to the punishment assessed, if he had not heard of said arrest.  Held:  The affidavit shows no contamination of any of the jurors except affiant; and, there was no showing that there was any truth in the rumor that the witness had, in fact, been arrested, and this court will not reverse a case upon the ground of mere rumor and hearsay in the absence of a further showing of prejudice than is here presented.

APPEAL from the District Court of Jack.   Tried below before Hon. J. W. PATTERSON.

This appeal is from a conviction for seduction, the punishment assessed being two years' imprisonment in the penitentiary.

Annie Kemp, the prosecutrix, testified in substance:   That she was 17 years of age; that she knew defendant all her life.   He lived about a mile and a half from her father's house.   He and she were engaged to be married in February, 1894.   He generally, for the past two years, came to see her two or three times a week, and every Sunday.   Defendant begged her to have sexual intercourse with him in June, 1894, and she refused.   In July, 1894, while returning from church at Rockland Chappel home with defendant, and in going through the woods, defendant again begged her to let him have sexual intercourse with her.   She refused.   He said, if she would, he would marry her, but if she didn't he would not marry her.   She at length yielded, under his promise to marry her.   In August following, he had sexual intercourse with her

twice, each time renewing his promise of marriage; and she relied upon his promises. She was asked: "Would you have yielded to the sexual embrace of the defendant, had it not been on account of the promise to marry you?" which question was objected to by defendant, because it was leading. She testified that the birth of her child was the result of the intercourse with defendant; and was permitted to state, over defendant's objection, that defendant was the father of her child then in her arms. She stated, that defendant visited her just a day or so before he was married to Miss Bell Miller, and that when she heard of his marriage, she could not believe it.

The father and mother of the prosecutrix testified to his constant visits to their house, and to the terms of familiarity with which defendant was there treated; his constant attentions to their daughter, and both testified to a conversation they once overheard, between the parties, which was equivalent to a statement by defendant that he was engaged to and intended marrying the prosecutrix.

Quite a number of witnesses testified to the good character of the prosecutrix for chastity up to the birth of her child. An effort was made by defendant to impeach her virtue, and acts of imprudence tending to show want of chastity were testified to by two or more of defendant's witnesses.

A motion for new trial was made, partly based upon misconduct, or rather the reception of new evidence by the jury. This matter is fully elucidated in the opinion.

*W. E. Taylor* and *B. R. McConnell*, for appellant.—The court erred in allowing the prosecutrix, Annie Kemp, to answer the interrogatory of State's counsel, as follows: "Would you, or not, have yielded to the sexual embraces of defendant had it not been on account of his promise to marry you?" because the question was a leading one and suggested the answer desired.

A leading question is one which may be answered by yes or no, and suggests the desired answer, and cannot be asked a witness on direct examination when the witness manifests no disposition to evade frank, plain and pertinent answers to questions propounded, and shows that there is no hostility existing in the witness as against the cause of the interrogator.

The witness, Annie Kemp, in the court, had shown no disposition to evade any question; nor had she in any manner indicated by her mode of testifying, that she was hostile to the cause of the interrogator in this case. In fact, her ready answers show that she was much enlisted in feeling with the prosecution in this cause. Matthews v. Buford 17 Texas, 152; Whar. Ev., 2nd Ed., p. 499; Tinsley v. Carey, 26 Texas, 350.

The court erred in allowing the prosecutrix, Annie Kemp, in answer to interrogatory of State, "Who is the father of your child that you have now in your arms?" to state, "Joe Snodgrass, the defendant," because

the testimony was incompetent and did not prove or tend to prove any issue in the cause, and was calculated to, and would prejudice the defendant's cause before the jury.

It was not an inquiry before the court and jury who tried this case, as to who the father of prosecutrix' child was, and said testimony, elicited as it was, in response to a direct interrogatory propounded by State's counsel, was inadmissible and could serve but one purpose, to-wit: to arouse the prejudice of the jury against appellant, and it should not have been admitted. Bowen v. State, 3 Tex. Crim. App., 617; Boothe v. State, 4 Tex. Crim. App., 202; Shultz v. State, 5 Tex. Crim. App., 390; Walker v. State, 6 Tex. Crim. App., 576; Sharp v. State, Id., 650; Cooper v. State, 7 Tex. Crim. App., 194.

*Stein, Chestnutt & Hurt*, for appellant, also filed an able brief and argument mainly devoted to showing that the evidence fails to make out a case of seduction.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of seduction, and given a term of two years in the penitentiary, and prosecutes this appeal. Appellant made a motion for continuance on account of the absence of Dave Jones, alleged to reside in Hill County, Texas, and Mrs. Lilly Grubs. As to the latter witness, it is sufficient to say that she was present at the trial, and was not placed on the stand by the appellant, but was used as a witness for the State. Appellant shows, as to the diligence used as to the witness, Jones, "that on March 9th, 1895, he applied to the Clerk of the District Court of Jack County, for an attachment to Tarrant County, Texas, for said witness, Dave Jones, as he was informed and believed said witness then resided in Tarrant County; that the same was thereafter returned by the sheriff of Tarrant County, stating that said witness was not found; that the defendant then began to make inquiries concerning the residence of said witness, and ascertained that on or about the 20th of August, 1895, said witness resided in Hill County, at Hillsboro, and defendant on said day applied for and had issued an attachment to Hill County for said witness; that thereafter, on the 9th of September, the sheriff of Hill County returned the said attachment, stating that Dave Jones was not found in said county. Defendant had another attachment issued on the 9th of September, to Hill County, for said witness, and said attachment has not been returned." Appellant does not show by any averment that said last mentioned attachment was ever sent to Hill County, to the proper officer. It occurs to us that, if appellant had used reasonable diligence between the March and September terms of said court, he could have located said witness, and had him under process. Appellant states he expects to prove by said witness that within a year of the time, and before, it is alleged in the indictment that the defendant seduced the prosecutrix, he (said wit-

ness) had had sexual intercourse with the prosecutrix, in Jack County, Texas. He does does not state the time or place when he had this act of sexual intercourse, but states, in a general way, that it was somewhere in the County of Jack, and some time within a year before the alleged prosecution. This allegation, to say the least of it, is very general. And, moreover, it is shown by a number of witnesses that said Dave Jones, who had, several years before, lived in Jack County, had not been seen in the neighborhood where the prosecutrix lived for some two years before the time of the alleged offense. We take it that, if said witness would swear to an act of sexual intercourse, as stated in said application, it is not probably true; and so the court did not err in overruling the application, and in refusing a new trial predicated upon this ground. On the examination of the prosecutrix, the State asked the witness, "Would you have yielded to the sexual embrace of the defendant, had it not been on account of his promise to marry you?" The bill of exceptions shows that the defendant saved an exception to this question, but the answer of the witness is not shown. This ought to have been shown. Besides, we see no objection to the question, regardless of the answer. Nor was it objectionable, in our opinion, to prove by the prosecutrix that the defendant was the father of her child, then in her arms. Nor was it objectionable to prove by the mother of the prosecutrix that she overheard a conversation between the appellant and the prosecutrix in April or May, 1894. This, we think, was legitimate testimony, tending to corroborate the prosecutrix as to the defendant's engagement to marry her. And in our opinion it was admissible to prove that the defendant was received at the house of the mother of the prosecutrix on terms of familiarity. On the trial of the case the State's counsel asked the witness, Steve Tighlman, if he did not say to Will Tighlman, in Leach's livery stable in Jackboro, Texas, in the month of March last, that E. W. Nicholson, counsel for the State, told him (Steve Tighlman) to go and tell Will Tighlman that he would put, or have him put, in the penitentiary, if he swore against the prosecution in this case, and also asked the witness if he, at the same time and place, in the presence of Roberts, said to Will Tighlman that, if any one swore against the character of the prosecutrix, he would not live to get out of town. Appellant's bill of exceptions shows that this testimony was objected to by defendant, and State's counsel stated that the purpose of the testimony was to impeach the testimony of defendant's witness, Will Tighlman. Appellant reserved his bill of exceptions to said question, because it was upon an immaterial issue. It will be noticed that the answer of the witness, or whether the answer of the witness was given, is not stated; nor is it shown that any evidence was adduced, upon this predicate, of an impeaching character. Under these circumstances, we cannot consider this bill of exceptions. We have examined the bill of exceptions to the refusal of the court to give the˙ charges asked by the appellant, and the exceptions to the charge of the court. We think the charge of the court upon the matters

embraced in said exceptions is sufficiently full and clear, and there was. no error in refusing to give the requested instructions.    Appellant, on· his motion for a new trial, produced the affidavit of one T. A. Hight, and said affidavit is to the following effect:    That he was one of the· jurors who tried this case against appellant; that, before the jury arrived at a verdict, they were taken to supper, and on the way back this juror, Hight, states that he heard somehow, but does not know how, that the· defendant's witness, Walter Tighlman, had been arrested for perjury committed on the trial of the case, and his bond had been fixed at $600.. This juror further states that the matter was mentioned before the jury, but he does not state what was said, nor does he pretend to state that it had the least effect upon any other member of the jury.    He does say, however, that before he had heard of this incident he had agreed on a conviction of the defendant, and the assessment against him of a small pe-cuniary fine; and he does not believe he would have consented to the. punishment assessed if he had not heard of the arrest of said Walter Tighlman, and then began to look at the probable bearing that the said arrest for perjury might have on the case in the event of any possible truth in said charge, and he then consented to the verdict which was rendered.    We would gather from the silence of this affidavit that none of the other jurors were affected in the slightest degree, and the only effect it is pretended said arrest could have possibly had was to contaminate and corrupt the mind of the juror who made this affidavit.    No evidence is presented by this affidavit, or otherwise, that there was even any truth in the report that said Walter Tighlman had been actually arrested on a charge of perjury committed in said case.    For aught that we know, this was mere idle rumor and hearsay; and it can hardly be· contended that this court is to reverse a case on the ground of mere rumor and hearsay of this character, which it appears so easily permeated the recalcitrant juror, and corrupted him to the extent of constraining him to agree with the other eleven jurors trying the case.    But, if' it be true that the witness, Walter Tighlman, had been arrested on said charge, we fail to see how this could be considered in the nature of new evidence in the case.    The ground upon which the charge, if any, was preferred against said witness, was on account of matters transpiring right before the jury, on the trial of the case.    They were in possession of all the facts, and the jurors could know whether there was any reasonable ground for the charge against said witness.    In the administration of law, it may be that the witness committed perjury in the case then being tried; and in such case it would be the duty of the officers, on. proper affidavit, to prefer the charge, and cause the arrest to be made.. Of course, where the case is on trial, it should always be managed so· that the arrest may be kept from the jury; but if the fact of the arrest should accidentally get out, and the jury get information of it, we can see no reason why this fact alone should cause a reversal of the case, especially in the absence of a further showing of prejudice against the defendant than is here presented.    See Parker v. State (Tex. Crim. App.),,

30 S. W. Rep., 553; Williams v. State, 33 Tex. Crim. Rep., 128. Another question presented in this case is as to the authority of the District Court of Jack County to hold a term òf court when the defendant was tried for this offense.   This same question was presented in the case of Phipps v. State (disposed of at the present term of this court), post p. 216; and on the authority of that case we hold that the District Court of Jack County held a legal term under the law of 1892 on the first Monday in March, 1896, and that the trial and conviction of the defendant was at a legal term of said District Court.   There being no errors in the record, the judgment is affirmed.

*Affirmed.*