[No. 6614.]

## DENVER CITY TRAMWAY COMPANY V. LOMOVT.

1. EVIDENCE—*Discrediting Witness—Contradictory Statements*—A mere expression of the opinion or feeling of a witness is admissible to discredit him, if it tends to manifest that in his testimony he was guilty of a fabrication. In an action against a street railway company for an injury to a child, attributed to the negligence of the motorman in the operation of a train, one who was an eye-witness gave testimony strongly tending to exonerate the motorman. On cross-examination he testified that he had never had any conversation with the attorney or claim agent of defendant as to what testimony he would give; that when put upon the stand no one connected with the defense had any idea of what he would say. He denied that when he picked up the child he had exclaimed that "the motorman ought to be lynched." *Held,* proper to admit testimony that the witness did make the exclamation imputed to him, expressly limiting it to its effect upon the credibility of the witness, and not as bearing upon or having any relevancy to the responsibility of the defendant.

2. ——*Laying Foundation.*—When it is sought to discredit a witness by evidence of statements which conflict with his testimony, the foundation must be laid by interrogating him as to whether he made the supposed statement; and his attention must be directed to the particular time and place thereof. But it is sufficient if the rule is reasonably complied with. If it appears that by the course of the interrogation the witness could not have been misled, this suffices.

*Appeal from Denver District Court.*—Hon. HARRY C. RIDDLE, Judge.

Mr. CHARLES J. HUGHES, JR., Mr. GERALD HUGHES and Mr. HOWARD S. ROBERTSON, for appellant.

Mr. R. D. REES and Mr. A. M. STEVENSON, for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

Action for personal injuries; judgment was for the plaintiff; the defendant appeals.

The appellee (a minor about eight years of age) while attempting to cross the appellant's street car tracks at the intersection of what is known as West Cable Place and Dale Court in the city of Denver, was struck by an eastbound car,

knocked under the fender or guardrail, and partially run over, from which she received serious and permanent injuries, including the loss of one foot except the heel. The car was stopped somewhere near the east side of Dale Court; it had to be backed up a little in order to remove the child.

This street (termed West Cable Place) upon which the car was running, is quite narrow, approximately twenty-one feet in width. The appellant operates two street car tracks upon it, which practically consume the entire street. There is a tight board fence about six feet in height upon the south side of this street between Dale Court and the street west. It starts near the corner of the street west, extending east along the south side of this street to the corner of Dale Court, thence extends south along the west side of Dale Court about thirty-five feet, where it connects with a two-story building which extends south to the next street. This fence on the south side of West Cable Place is within about four feet four inches from the first rail of the street car track used by the cars coming from the west, making the body of the car come within about two feet of the fence. There is a rise in the grade on West Cable Place from Dale Court extending two or three blocks west, making quite an incline for the cars to come down. From the east side of Dale Court there is a slight rise to the east. Dale Court is approximately eighty feet in width between the lots lines.

From the above general statements it follows that a person of ordinary heighth going north upon the west side of Dale Court could not see a car coming from the west until he reached the corner of the fence at West Cable Place, which would then make him within about two feet of where the outside of the car would pass. This is about the point where the child was struck. There is evidence, that the appellee and two other children were going north upon the west side of Dale Court; that one of them had crossed the tracks; that the little girl who was injured came second upon the track, when she was hit by the car; that the car was running at a high rate of

speed; that it had not stopped at either of the two streets west of Dale Court but made a continuous run or shoot down the hill. One witness said, "The car went by so fast it drew my attention;" another "just like a cyclone, the way it flew past the window;" another "it went awful fast." The general estimate for plaintiff's witnesses was that the car was running from twenty-five to twenty-six miles per hour. There was evidence to the effect that it was allowed to run wild or shoot down the hill, without any control; also, that the motorman did not sound the gong at the approach of this or the other two crossings west, nor at all, at any reasonable time preceding the accident; also, that it took from seventy to eighty feet within which to stop the car after the child was struck. There is also evidence that this district is thickly inhabited, with many children who use Dale Court and vicinity as a playground; that they play all along there in large numbers; that the motorman operating this car had been in the employ of the company for a long time and was perfectly familiar with these conditions.

It is conceded that the place is an extremely dangerous one, requiring care and caution by the defendant company in the operation of its cars, not only upon account of the street being narrow, and Dale Court, where intersected, being at the bottom of the hill, but on account of the tracks' close proximity to the fence, and the impossibility for a pedestrian walking north upon that side of the street to see the cars, until he walks out immediately in front of where they pass; likewise the motorman's inability to see anyone walking north until he has reached a point within about four feet of the track.

On behalf of the appellant there is evidence that the car was not running to exceed from three to eight miles per hour at the time the child was struck, also, that the motorman was ringing the gong continuously; that he had the car in perfect control, and that he made a good stop immediately upon seeing the child walk in front of the car, and that he stopped the car within thirty or forty feet. It will thus be observed that

there is a sharp conflict in the evidence pertaining to any negligence by those who were operating the car.

. The principal contention relied upon to secure a reversal pertains to the admission of certain testimony.

Earl Murray, a witness upon behalf of the defendant, testified that he saw the accident, was probably one hundred or one hundred twenty feet from where it occurred; that he noticed the car first about twenty feet from the point of the collision; that the little girl was running down the sidewalk, near the board fence, pretty close to the track; that the car was coming towards Dale Court; that just before the collision the car was moving five or six miles an hour or a little faster than he could walk, but it appeared to slow down a little before the child was hit; that he carried the child to the drug store. On cross-examination he said that he had made no statement to the defendant or its claim-agent; that he did not talk to him about how the accident occurred; that he simply came and subpoenaed him, and said "How do you do," and went on; that he could not remember the name of the man who subpoenaed him, did not talk with him about the case; that he had never talked with anybody, nor told them what he would testify to; that he had never told a soul, neither the lawyers, the claim-agent, nor anybody else what he would testify to; that when he appeared upon the witness stand they hadn't any idea what he was going to say; that he was positive of these facts; that they brought him there without any knowledge of what his testimony would be. He was further asked and gave answers as follows: "Q. You were pretty mad at the time you picked up this little child, weren't you? A. Yes sir, I was. Q. You said this, (with an oath) * * * motorman ought to be lynched' did you not? A. No sir, I said that you people stand around here—they wouldn't give me a shawl to put around the little girl's foot. Q. Did you say that, that this motorman ought to be lynched? A. No sir. Q. You are as sure of that as you are of the rest of your testimony? A. Yes, sir. Q. Or that the motorman ought to be lynched

or killed? A. No sir, I didn't say that to nobody." There were no objections to any of this testimony.

In rebuttal two witnesses were called by plaintiff, both of whom, over objections, testified that the witness Murray, at the time and place of the accident, said with an oath that the motorman ought to be lynched. When the objection was made counsel for the plaintiff said that the evidence was offered solely as affecting the credibility of the witness. The court in ruling upon the objections said:

"I think the objections will be overruled; that is the testimony may be received in a limited sense. Any statement made by the witness at that time, if he did make one upon the line indicated, would not be binding upon this company in any sense, and would not be received by the jury for the purpose of binding the company or showing their responsibility, but 1 think I will allow it to go to the question of the credibility of the witness."

Two objections are urged to this evidence. First, that no proper foundation was laid for it at the time the witness Murray was upon the stand. Second, that had the proper foundation been laid, the statement of the witness is wholly immaterial and irrelevant; that it does not throw any light upon his credibility, and his character was not in issue; that it contained no statement of facts and that a witness cannot be impeached upon any immaterial question.

We will consider the objections in the order urged. As to the first, while each question asked the witness Murray concerning the statement purported to have been made did not specifically mention the time and place, they all referred to the time and place, when and where the accident occurred and while he was assisting in removing the child. He was being interrogated as to what he said at that time, and the questions were of such a nature that he could not have misunderstood those facts or have been misled thereby; if other proof was needed his answers are conclusive of this fact.

In Vol. 2, Elliott on Evidence, the general rule is said to be that the proper foundation must be laid by asking the witness if he made such a statement, in order to give him full opportunity to understand all of the circumstances so as not to be taken off his guard, and his attention must be directed to the time and place when and where the statements were made. But in commenting upon this rule, in section 974, the author says:

"But this rule is to be given a practical application, and it is sufficient if the time, place, person and substance of the statement are designated with reasonable certainty, so that the witness will clearly understand the matter and not be misled. * * * if the attention is clearly called to the alleged conversation or statement, and circumstances are so detailed that there can be no misunderstanding, it will be sufficient, even though time, place and person are not all fully and specifically designated."

This rule was reasonably complied with; neither the witness, jury, court or counsel could have been misled for any failure to make it more specific.

The second objection presents a more serious question. It is claimed that the statement of the witness is wholly immaterial and irrelevant; that it did not throw any light upon his credibility; that his character was not in issue; that under the rules for impeaching witness and attacking their credibility this line must be limited to some material matter relevant to the issue; that the statement, if true, pertained to no fact concerning the accident; that it was entirely foreign to that issue, simply a declaration by the witness (a bystander) after the accident as to something that he thought ought to be done. This objection raises two questions: first, was the impeaching testimony improperly admitted? second, if so, was it prejudicial?

That there is a conflict in the great mass of opinions upon this line of questions cannot be denied. They cannot be har-

monized, we shall not attempt to do so, but shall apply the rule which commends itself to our judgment.

In Vol. 2, Elliott on Evidence, pertaining to the different methods of showing contradictory statements and acts for the purpose of lessening or destroying the credibility of a witness, in section 971, it is said, "The witness may also be impeached by proving inconsistent and extraordinary statements made out of court." In section 975 on the same subject it is said, "inconsistent acts and conduct as well as inconsistent statements may be shown in a proper case."

Upon the question of what is irrelevant, immaterial and collateral to the issues on trial upon which a party can be impeached, in Elliott on Evidence, Vol. 2, section 977, it is also said:

"Proof of such matters as the following has been held competent to impeach the witness, namely, that he proposed to secure testimony for the party cross-examining him if he was paid money for it; that he had been guilty of subornation in the same trial; and that he had made threats against the party cross-examining him."

In Vol. 1, Greenleaf on Evidence (16th Ed.), section 462a under the title "What is an Inconsistent Statement" it is said:

"It is not necessary that there should be a total opposition or contrariety between the assertion made on the stand and the other statement; the discrediting quality lies in their being substantially variant or inconsistent. The other statement may be oral or in writing; it may be in words or by conduct. Where it is broad and indefinite, and touches only the general merits of the case, difficult instances often arise; thus, A testifies for the prosecution that he saw B near the scene of the arson; is it admissible to show that A has elsewhere declared that he is sure that B is innocent? It is common with some courts to say that such statements are inadmissible because mere opinions; but this seems unsound; the true inquiry is, Does the other statement in effect involve an assertion incon-

sistent with that made on the stand? The precedents are not harmonious, and much depends on the terms of the specific assertion."

Upon the same subject, as tersely put in *Handy v. Canning*, 166 Mass. 107, at page 109 it is said,

"The test in such a case as the present, for the purpose of contradicting· the testimony of a witness, is whether, by common experience, different statements would mean different positions taken as to fact foundations rather than as to the law conclusion."

In Vol. 30 (2nd Ed.), Am. & Eng. Ency. of Law, page 1112, it is said:

"It has been frequently held that a former statement of a witness, to be admissible to discredit his testimony, must be a statement of fact, and not merely an expression of the opinion of the witness inconsistent with a different opinion which the facts to which he testifies tend to establish. Many of the decisions which seem to support this doctrine, however, are distinguishable on the ground that the opinion of the witness sought to be given in evidence was not in any degree inconsistent with or contradictory of his testimony in any material particular; and there are several well-considered cases supporting the admissibility of evidence of former opinions of witnesses for the purpose of impeaching their credibility."

In *United States v. Holmes,* 1 Clifford's Reports, 98, at page 116, it is said:

"Circumstances may be offered to rebut the most positive statement, and it is only necessary that the testimony offered should have a tendency to explain, repel, counteract, or disprove the opposite statement, in order to render it admissible."

In *State v. Kingsbury,* 58 Maine 238, the defendant was indicted for inciting another to set fire to a building. To contradict the testimony of his wife a witness was called who swore, that he called on her after the husband was taken away, and after the confession of the person setting the fire; that he

asked the wife if she knew why her husband was taken away, that she said she did not; that he told her he understood that another had made a confession in which he stated that her husband hired him to burn the house; that she replied, "Well, he would never have done it, if it had not been for others— others are more to blame than he was." Her evidence tended to prove that nothing could have been said or done by her husband in the presence of the others to induce them to set the fire. This testimony was held competent. At page 241 the court said:

"Whenever a witness has testified to any material facts, any acts or declarations of his which appear to be inconsistent with such testimony, are competent by way of contradiction. * * * It is not necessary that the contradictions should be in terms; statements by the witness, inconsistent with his testimony upon material matters, may be proved against him."

*Emerson v. Stevens,* 88 Mass. 112, was an action for trespass in driving a wagon against a horse. The defendant, on cross-examination had denied that he said to a third person that he had a right to one-half of the road, and to break the legs of plaintiff's horse if he stood in the way; *held,* that it was competent to show by way of contradiction that he so stated. At page 112, the court said, "We think it was of such a character that the jury might rightfully draw some inference from it upon the point of the defendant's having done the act complained of; and of his having done it intentionally or otherwise."

In *Mayer v. The People,* 80 N. Y. App. 364, a witness who gave testimony favorable to the defendant, on cross-examination was asked if he had not said to anybody that the prisoner and his partner had been guilty of great wrong, also if he had not said that they had acted as thieves; *held,* that the allowance of the questions was not error. The witness' answer to both questions was that he did not remember; the court at page 378 of the opinion said, "The answers of the witness were such as to render further inquiry useless; but if he had

answered in the affirmative, it is not difficult to see that a material contradiction might have been reached by following up the inquiry."

Upon the principal question the court, at page 378, said:

"They were asked on the cross-examination of a witness who had given evidence tending to show the innocence of the defendant, and the fact testified to was one which, if true, would naturally induce the witness to believe him innocent; * * *. Any declarations, therefore, of the belief of the witness in the defendant's guilt, were in some degree inconsistent with this very material piece of evidence which he had given in defendant's favor. The questions put to the witness did not, it is true, point directly to a declaration of his belief in the defendant's guilt of the particular offence for which he was on trial; but it is evident that their object was to draw from a reluctant witness an admission that he had made some such declaration, and the latitude allowable upon cross-examination was not, we think, exceeded in allowing the subject to be approached in the manner in which it was."

In *Schell v. Plumb et al.*, 55 N. Y. App. 592, upon the alleged breach by T. of a contract to support plaintiff during his life, a witness called by defendant testified to conversations between the parties, and admissions by plaintiff, in substance, that no contract had been made. Upon cross-examination the witness was asked if he had not since said that plaintiff should have $1,000 out of T.'s estate; this the witness denied; plaintiff thereupon, for the purpose of discrediting said witness, offered and was allowed to prove, under objection, that he had so said. *Held,* this was not error, as it was equivalent to a declaration that the contract was made. The objection to this question was the usual one, on the grounds that it was immaterial to the issue, and that the plaintiff was bound by the answer, and could not contradict it; to this the court held that "the proof would warrant this conclusion (that the statement

was equivalent to a declaration) and is therefore proper for the consideration of the jury."

In *Patchin v. The Astor Mutual Insurance Co.,* 13 N. Y. App. 268, it was held where a witness for plaintiff, who was on board a steamer at the time of a fire, testified that she was seaworthy, and gave evidence tending to prove that the fire did not originate by reason of the alleged defect, and on cross-examination denied that immediately after the fire he made certain statements as to the seaworthiness of the vessel, and concerning the origin of the fire, contradictory of his testimony; it was held that it was competent for the defendant to prove by other witnesses that he made such statements to contradict and discredit him.

In *The People v. Jackson,* 3 Parker's Criminal Reports (N. Y.) 590 (which was a trial for larceny), the prosecuting witness on cross-examination was asked if he had not said to one Emly that he did not think the prisoner intended to do anything wrong, but wanted to climb too high, and answered that he did not recollect it, and that he did not know that he had said so. Emly was called as a witness for the prisoner and was asked whether the prosecuting witness had not so stated to him. An objection was sustained to this question; such exclusion was held to be erroneous. The court, at page 598, said:

"If he had answered that he had said so, as it must be assumed Emly would have testified, then the jury would have had before them the inconsistency of his prosecuting a man for stealing, while he had declared that he did not believe the man intended any wrong. The statement, or his evidence, would require some explanation, and might have led to his discredit with the jury."

In *State v. Baldwin,* 36 Kans. 1, a somewhat similar question was before the court wherein, at page 14, it is said:

"The objections urged to the question asked the clergyman Mulford on cross-examination are not good. After stating in his examination in chief what the conduct and appear-

ance of the defendant were soon after the death of his sister, with a view of showing the conscious innocence of the defendant, it was proper to inquire if the witness had not stated before the coroner's jury that the defendant impressed him at once as being guilty of the murder. It was allowable on cross-examination, and besides, if denied, it afforded a foundation for impeaching the witness."

In *Spalding v. Merrimack*, 67 N. H. 382, the action was for an injury resulting from an alleged defect in a highway; the plaintiff's evidence tended to show that water running down the road had worn through the ice and formed a gully two or three rods long; that his horse's foot was caught in the gully, thereby causing the injury. The defendant denied the existence of the gully. A witness called by the plaintiff testified that the gully was of the character above stated; that he saw it two or three days before, and two or three days after the accident, and that by reason of its existence he drew his firewood by another route. The defendant called the highway surveyor who testified that before the accident, the exact date he could not say, he told this witness to repair any defects he might see in the road, and that he should be paid therefor; that the witness some time before the accident had repaired the road and been paid for so doing; *held,* competent to discredit the witness.

In *Yeaw v. Williams*, 15 R. I. 20, the horse of a traveler on a highway was frightened; the traveler was injured by a collision with a post in the road; the question was whether the town was negligent in allowing the post to stand in the road. The surveyor of highways, a witness for the defense, stated that he thought the position of the post did not make it dangerous. In cross-examination he was asked if he did not, after the accident, remove the post. It was held properly admissible to show that his conduct was inconsistent with his expressed opinion.

In *Hyland v. Milner et al.,* 99 Ind. 308, it was held that the acts of the witness relevant to the subject-matter of the

action inconsistent with his testimony, may be shown as affecting his credibility.

In *Whitney v. Butts,* 91 Ga. 124, it was held that the testimony if a witness may be attacked by showing conduct on his part inconsistent with such testimony.

In *State of Oregon v. Lurch,* 12 Oregon 104, it was held that the conduct of the defendant upon the occasion of borrowing certain money, as well as his statements and representations, showing that he had no such authority, incompatible with his testimony, would tend to weaken it, for which reason it was competent.

The questions to the witness Murray were without objection. On cross-examination in such matters a large discretion is vested in the trial court, but when it comes to contradicting the answers the discretion is not so extensive. Was this statement by the witness Murray, if made, at variance and inconsistent with his testimony? and was it pertinent to the substance of any material subject testified to by him? or did it constitute an extraordinary statement, in any way conflicting, or tending to conflict with, his testimony? It will be observed that he was an eyewitness to the accident and according to his testimony the car was running at an unusual slow rate of speed, and make a good stop. The substance of his entire testimony is that there was no negligence upon behalf of the motorman, but that the child was running down the sidewalk near the board fence, and ran upon the track where she was hit. The only rational conclusion to be drawn from his testimony is that the accident was due solely to the negligence of the child; yet, regardless of this and immediately at that time while assisting in removing the child he stated, according to the other witnesses, that the motorman ought to be lynched. The jury heard his testimony, which, as far as it went, was to exonerate the employees of the company from any negligence.

In the case of *Askew v. The People,* 23 Colo. 446, this court said, "The test of whether a fact inquired of in cross-examination is collateral, is this: Would the cross-examin-

ing party be entitled to prove it as a part of his case, tending to establish his plea?"   Accepting this as a correct declaration of the law, when applied to this case, was not the substance of the purported statement by the witness Murray what the plaintiff had the right to prove to establish her cause of action, to-wit, the wrongdoing, the negligence of the motorman in the operation of the car?   The witness is purported to have said that the motorman ought to be lynched.   Is not this, in substance, a statement by him that the motorman had committed a wrong, had done an injury to the child?   The only way that he could have done her an injury or have committed a wrong was in his negligence in the management and operation of his car. It will be observed that the witness did not condemn the company in the appliances furnished or otherwise, nor the conductor in the discharge of his duties.   This statement was purported to have been given at the time of the accident; the witness had an opportunity on the stand to explain it, but instead he denied making it.

Applying the general principles announced in the books heretofore cited to the facts here, we think this alleged statement of the witness Murray was of such a character that the jury might rightfully draw the inference that it was equivalent to a declaration that the motorman was negligent in the operation of his car, and was therefore inconsistent with his testimony at the trial, and under the circumstances of this case was proper as an inconsistent statement as affecting the credibility of his evidence.   Further, some of his answers were peculiar wherein he says that he had never talked with anybody about this matter, or what he would testify to; that he had never told a soul, neither the lawyers, the claim-agent, nor anybody else; that when he appeared upon the witness stand they hadn't any idea what he was going to say; that he was positive of these facts.   His testimony was very favorable to the defendant and in conflict with that of numerous other witnesses.

From these facts, when considered with the fact that the substance and effect of this purported statement could probably

be construed as in conflict with the substance of his testimony, and when considered with the further fact that the trial court, in admitting it, stated that it might be received in a limited sense only, that it would not be received by the jury for the purpose of of binding the defendant, or showing their responsibility, the jury not taking it for these purposes, but only upon the question of the credibility of the witness; we conclude that the trial court was justified in thus allowing this liberal latitude as affecting the credibility of the witness. Having determined that the impeaching matter was not immaterial but in substance as coming within the rule of contradictory or inconsistent acts and statements, it is unnecessary to discuss whether its admission would have been a harmless error.

The other errors urged have been considered, but from a careful review of the entire record, we are of opinion that no error of sufficient importance is shown to justify a reversal. The judgment is affirmed. *Affirmed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE GARRIGUES concur.