STATE ex rel. KIIHL, Respondent, v. CHAMBERS, Appellant.

(159 N. W. 113.)

(File No. 3662.   Opinion filed September 9, 1916.)

1.  **Bastardy—Relator Unmarried, Necessity of Showing—Statute—Special Finding, Whether Necessary?—Instruction, Necessity of.**

Under Code Civ. Proc., Sec. 807, it is only in cases where an unmarried woman is pregnant, or has given birth to a child deemed by law a bastard, that a bastardy proceeding is maintainable; an allegation that she was unmarried is essential, in the complaint; and where there was no direct proof that relator was unmarried at either of the above-mentioned times, a verdict finding defendant to be the father of the child in question cannot stand.   Held, further, that it is unnecessary for jury to specially find relator is unmarried, they should have been instructed they could not find a verdict for relator unless satisfied from evidence that she was unmarried.

2.  **Same—Relator Unmarried, Waiving Question of, By Requesting Instruction on Fatherhood—Statute.**

Defendant in bastardy proceedings does not waive requirement of Code of Civ. Proc.; Sec. 809, that relator must have been unmarried, by requesting instruction, substantially in words of Sec. 809, providing that the issue to be tried is whether he was the father of the child.

Whiting, J., and McCoy, J., dissenting.

3.  **Same—Evidence—Fatherhood of Child—Relator's Testimony, as Conclusion—Previous Testimony to Facts, Effect.**

Where, in a bastardy proceeding, relator, in response to a question as to who was father of the child, testified that defendant was, held, that, she  having previously testified to several acts of sexual intercourse between her and defendant at about the time she must have become pregnant, and also knew whether any other man had had such intercourse, her answer to the question was not incompetent as being a conclusion and opinion of witness.

4.  **Witnesses—Bastardy—Impeachment—Physician's Statement as to Fatherhood of Child, Whether Probable to Impeach Testimony on Cross-Examination—Collateral Matter—Rule Stated.**

Where, in a bastardy proceeding, a physician testified that relator told him of intercourse with another man than defendant, and, on cross-examination, that he did not give it as his opinion, to members of relator's family, that defendant was the father of the child, and that they should take steps to compel defendant to support it, could not be impeached by testimony of the family that he so stated his opinion to them; such matter being collateral to the issues; that, while the rule

is general that a witness may be cross-examined on all matters brought out on his examination in chief, and, for purpose of impeaching him, prior statements by him touching the same matter, at variance with statements on witness stand, may be shown, yet this relates only to statements of fact, or what purports to be fact, and not to mere expressions of opinion of matters collateral to the issue; following State v. Davidson, 9 S. D. 564, 70 N. W. 879.

Whiting, J., and McCoy, J., dissenting.

5.  **Bastardy—Evidence of Unchastity—Purposes of Evidence, Fatherhood of Child, and Credibility—Common-Law Rule, Effect of Statute on—Instructions.**

Where, in a prosecution for bastardy, trial court instructed, at defendant's request, that, in determining whether defendant was father of relator's child, the jury might consider any evidence, if any, tending to show previous unchastity of relator, and then, upon its own motion, that offering of evidence o her unchastity is to be considered only for purpose of determining fatherhood of child, or whether the fact that she was unchaste would affect her evidence, held, against defendant's objection that, by enactment of Code Civ. Proc., Sec. 809, providing that on such proceeding evidence of relator's previous unchastity is admissible, the scope of evidence was enlarged so as to make evidence for other purposes admissible, that such was not its effect; that while such previous unchastity could be shown at common-law prior to enactment of that statute, yet the fact that the act contains provisions existing at common-law does not imply that the Legislature intended to change or enlarge upon provisions or rules of law already in existence; and the instruction given was proper.

Appeal from Circuit Court, Hamlin County. HON. CARL G. SHERWOOD, Judge.

Bastardy proceedings by the State, on the relation of Bertha Kiihl, against Roy Chambers. From a judgment against defendant, and from an order denying a new trial, defendant appeals. Reversed.

*Hall, Alexander & Purdy,* and *M. S. Liebenstein,* for Appellant.

*Hanten & Hanten, Perrett F. Gault,* and *W. N. Skinner,* for Respondent.

(1)  To point one of the opinion, Appellant cited: Healey v. Wright, 3 K. B. 299; 28 A. C. 1047; Welch v. Cilbern, 94 Miss. 443; 19 A. C. 388, and note; 3 Encyc. of P. & P.; 275; 4 Stand.

Encyc. of Pro. 64; Maynard v. People, 135 Ill. 416; 25 N. E. 740; Johnson v. State, (Neb.) 76 N. W. 427.

Respondent cited: Alminowicz v. People, 117 Ill. App. 415; State v. Moffit, 136 N. W. 908 (Ia.)

(3)  To point three of the opinion, Appellent cited: Jones on Evidence Section 322, pockett edition; Evans v. People, 12 Mich. 27; Chaplin v. Insurance Co., (S. D.) 129 N. W. 238; Lincoln v. Railway Co., 23 Wendell 432; Jones on Evidence, Sec. 820, pocket edition; State v. Davidson, 70 N. W. 879.

Respondent cited: State v. Johnson, Ia. 56 N. W. 404; Altschuler v. Algaza, 16 Nebs. 631, 21 N. W. 401; State of Minn. v. Snure, 12 N. W. 347; State v. Peoples, 9 N. D. 146, 82 N. W. 749; State v. Knutson, 18 S. D. 444.

(4)  To point four of the opinion, Respondent cited: Wendt v. Chicago, St. Paul and Milwaukee R. R. Co., 4 S. D. 472, 67 N. W. 222; Jones Commentaries on Evidence, Section 822, Vol. 5, page 122, Section 826, page 128.

(5)  To point five of the opinion, Appellant cited: 1 Wigmore on Evidence, Sec. 133.

POLLEY, P. J.  This proceeding was instituted under the provisions of sections 807-815, C. C. P., commonly known as the Bastardy Act:  The complaint, in substance, follows the provisions of section 807.  The jury returned the following verdict:

"We, the jury in the above-entitled action, find that Roy Chambers is the father of the female child given birth by Bertha Kiihl-at Dempster, in Hamlin county, South Dakota, on the 1st day of April, 1912."

And upon this verdict judgment was entered, as provided by section 811, C. C. P.  From this judgment, and from an order denying a motion for a new trial, defendant appeals.

[1, 2]  It is first contended by appellant that there was no evidence offered at the trial to prove that the relator was unmarried either at the time of the intercourse that resulted in her pregnancy or at the time of the birth of the child, and that, for that reason, the evidence does not support the verdict.  Under the provision of section 807, C. C. P., it is only in cases where an unmarried woman is pregnant, or has given birth to a child which by law is deemed a bastard, that this proceeding can be maintained; and it is true that, in this case, there was no direct

proof that relator was unmarried at either of the above-mentioned times. This, we believe, was fatal to the verdict. The allegation in the complaint that the relator was unmarried was absolutely necessary under the statute to give the court jurisdiction of the subject-matter of the action. That the relator was unmarried was essential to the liability of the defendants, and it is necessary that this fact be shown by the evidence. There is no presumption that the relator was unmarried, and, inasmuch as it is only in cases where the relator is unmarried that the action can be maintained at all, there must be proof that the relator belongs to the class provided for by the law. While we do not think it necessary that the jury should make a special finding that the relator is unmarried, they should have been instructed by the court that they could not find a verdict for the relator unless they were satisfied from the evidence that she was unmarried. It is contended by respondent that appellant waived this issue by requesting the court to instruct the jury that the issue to be tried is whether or not the defendant is the father of the child born to the complaining witness. The instruction given pursuant to this request is substantially in the language of section 809, Code Civ. Proc., but a request to instruct the jury under section 809 cannot be held to be a waiver of proof of facts that are essential under the provision of section 807. Neither the request nor the instruction given was intended to cover all of the issues involved in the case.

[3] While the relator was on the stand she was asked this question: "Who is the father of that child?" This was objected to on the ground that it called for a mere conclusion and opinion of the witness. The objection was overruled, and the witness answered: "Roy Chambers." Appellant contends that this question covers the whole issue submitted to the jury, and that the admission of the answer was such an invasion of the province of the jury as warrants a reversal of the judgment. Of course if this testimony is only the expression of the opinion or conclusion of the witness, then appellant's contention is correct. But we do not agree with counsel in this respect. Relator had testified to several acts of sexual intercourse that took place between her and appellant at about the time she must have become pregnant. She knew, of course, whether appellant had had sexual

intercourse with her at about the time, and she also knew whether any other man had had intercourse with her at about that time, and was able to state, as an absolute fact, from her own knowledge, that appellant was the father of her child. Whether she was telling the truth or not was a question for the jury. Of course appellant had the right to rebut or break the force of this testimony, if he could, either by cross-examination of the witness herself or by the testimony of other witnesses; and that he attempted to do this is amply shown by the record. In State v. Snure, 29 Minn. 132, 12 N. W. 347, the Supreme Court of Minnesota held—and we believe rightly so—that it was no error to permit the complainant, in a bastardy proceeding, to testify that she became pregnant as the result of certain acts of sexual intercourse with the defendant, and it has been held, in criminal prosecutions for seduction, that the complaining witness may testify that the defendant is responsible for her pregnancy. Knight v. State, 64 Tex. Cr. R. 541, 144 S. W. 967; Snodgrass v. State, 36 Tex. Cr. R. 207, 36 S. W. 477. In our opinion, there was no error in permitting the relator to answer the question.

[4] During the trial, the physician who attended the relator at the time of her confinement testified on behalf of the defendant. His testimony related chiefly to statement made by relator at that time relative to the paternity of her child. He testified that relator, not only told him at that time that she had had sexual intercourse with the defendant at about the time she must have become pregnant, but that she told him at that time she had also had sexual intercourse with another man at about the time she must have become pregnant. In fact, if this testimony relative to what he claims relator told him and what he testified relative to the period of human gestation is true, it would have been impossible to say, with any degree of certainty at least, who was the father of the child. On cross-examination this witness was asked if he did not, within a day or two after the child was born state to various parties, including the mother and brother of relator, in effect, that defendant was the father of relator's child, and that they (the mother and brother) ought to take some steps to compel defendant to support the said child. The witness denied that he had made such statement to said parties. On rebuttal, relator's mother and brother were permitted, over appellant's ob-

jection, to testify that said witness did make such statements to them at that time. It is now contended by appellant that this was error, and of so prejudicial a nature that the judgment should be reversed on this ground alone. Appellant relies, with confidence, upon the rule that "a witness cannot be impeached upon a collateral matter brought out on cross-examination," as announced by this court in State v. Davidson, 9 S. D. 564, 70 N. W. 879. We do not question the correctness of this rule, but, before it can be applied, it must be determined that the matter brought out on cross-examination is in fact collateral to the issue. The rule is general that a witness may be cross-examined relative to all matters brought out on his examination in chief, and, for the purpose of impeaching such witness, it may be shown that he has made prior statements, touching the same matter, at variance with his statements on the witness stand. But this relates only to statements of fact, or what purports to be fact, and not to mere expressions of opinion of matters that are collateral to the issue. If the question had been limited to what the witness said the relator had told him relative to the paternity of her child, then it would have been proper, but the question calls for what the witness has stated to have been his opinion as to who was the father of relator's child. This was clearly collateral to the issue within the rule announced in the Davidson Case, and constituted prejudicial error.

[5] Appellant next contends that the court erred in instructing the jury upon the subject of previous unchastity of the relator, Section 809, C. C. P., provides as follows.

"The issue to be tried on such complaint shall be whether the person charged, as aforesaid, is the father of the child, which issue shall be tried by a jury. In any hearing or examination or trial under this article evidence of the previous unchastity of the female shall be admissible."

Upon the subject of previous unchastity, the trial court, at the request of appellant, charged the jury that, in determining whether or not appellant was the father of relator's child, they might—

"consider any evidence tending to show the previous unchastity of the prosecuting witness, Bertha Kiihl, if you shall find that any such evidence has been given in this case."

And the court, upon its own motion, further charged the jury that:

"The offering of the evidence of unchastity on the part of Bertha Kiihl * * * is to be considered by you only for the purpose of determining who the father of the child was, or whether the fact that she was unchaste * * * would affect her evidence."

Previous unchastity on the part of the complaining witness in bastardy proceedings could be shown prior to the enactment of section 809, and it is contended by appellant that, by the enactment of this section, the Legislature intended to enlarge the scope of evidence of previous acts of unchastity and make such evidence admissible for purposes other than those to which it was limited by the common law. With this contention we cannot agree. In the first place, appellant suggests no other purpose for which it is admissible; and, in the second place, section 809 itself limits the issue to the single question of whether the person charged is the father of relator's child. The sections of the Code above referred to as constituting the Bastardy Act were enacted by the Legislature as chapter 50, Laws of 1899. The intent of the Legislature appears to have been to provide, in one act, a complete remedy in this class of cases; and the fact that the act contains some provisions that existed at the common law does not imply that the Legislature intended to change or enlarge upon provisions or rules of law already in existence. The jury might have inferred, from the instruction given at appellant's request, unexplained, that previous unchastity on the part of the relator constituted a defence to the action regardless of the length of time that had expired since the occurrence of such acts of unchastity. But such is not the case. It is only when other acts of unchastity occurred at a time when the relator might have become pregnant that such acts constitute a defense, and the instruction was properly given.

Appellants contend that there was misconduct of the jury that prevented him from having a fair trial; but, as the judgment must be reversed on other grounds, and as the acts complained of as constituting misconduct are not likely to occur again, it is not necessary to determine whether there was misconduct or not.

The judgment and order appealed from are reversed.

WHITING, J. (dissenting). A reading of the whole record shows conclusively that it was taken as a conceded fact that the complainant was unmarried. If anything were needed to remove all doubt as to such concession, it is to be found in an instruction given at defendant's request, which announced "the issue to' be determined" to be "whether or not the defendant * * * is the father of the * * * child shown to 'have been born to the complaining witness." The appellant should not now be heard to raise any question as to the sufficiency of proof of this conceded fact.

To support the holding that it was error to allow the physician to be inpeached by the testimony of other witnesses, my colleague has cited the case of State v. Davidson, decided by this court. My colleague has certainly failed to correctly interpret the views expressed in that case, as the decision in that case fully supports the ruling of the trial court in this case. It is well to note the difference in the situation presented in this case at the time of the cross-examination of the physician and that presented in either the Davidson Case when Hodgkins was cross-examined, or that in the Drake Case (quoted from in the Davidson Case) when the defendant's son was cross-examined. By calling the physician and introducing his testimony appellant räised an issue not collateral to, but directly bearing upon, the main issue of this case; he raised the issue of whether the complainant had made a statement which, if true, would throw doubt on the paternity of her child—the sole question before the jury. The state 'had a right to meet this issue by any competent proof, either through such direct testimony of complainant or other witnesses as would throw doubt on the truthfulness of the physician's statement, or by direct impeachment of the physician. Any fact which a party would have a right to prove directly he can seek to establish through cross-examination, and, if disappointed in such cross-examination, then through the impeachment of the witness cross-examined, by showing that such witness has, prior thereto, made statements inconsistent with his testimony in chief. Such proof is not proof of something collateral to the issue, under the rule laid down by Sharswood and quoted in the Davidson Case; nor is the fact sought to be proven a collateral fact under the test of what is collateral as announced in the leading case of Attorney

General v. Hitchcock, 1 Exch. 99, which has been generally approved and adopted. Wigmore, § 1021. "The test of whether a fact inquired of on cross-examination is collateral is, Would the cross-examining party be entitled to prove it as a part of his case tending to establish his plea?" "Could the fact, as to which the prior self-contradiction is predicated, have been shown in evidence for any purpose independently of the self-contradiction?" The fact sought to be established upon the cross-examination and by the examination of the impeaching witness was that complainant had never made statements to the physician which statements cast doubt upon the paternity of her child. That the matter sought to be proven on the cross-examination—namely, statements by the witness inconsistent with his evidence in chief—was not collateral is virtually conceded by my colleague; he admits that if the statement in question had been a statement of fact and not of opinion it would have been a proper subject for cross-examination and a proper subject to form the basis for impeachment. It seems, therefore, that the real basis for his holding is the fact that the statement was one of opinion. He seems to have overlooked an important matter. In offering, for the purpose of impeachment, evidence of a statement of fact inconsistent with a witness' sworn statement, the evidence is not necessarily offered for the purpose of proving the prior statement to be true, but merely for the purpose of leaving it doubtful as to which statement is true. In the same way a prior statement of opinion is not offered for the purpose of showing what the witness' prior opinion really was, but to raise a doubt as to whether such statement correctly gave the witness' opinion, or whether his evidence given on the stand was truthful. As is well said by Wigmore at section 1041, when discussing the question of impeachment by showing self-contradiction on the part of a witness:

"The usual case of this kind is that of a general statement upon the merits of the controversy, which is now offered against a witness who has testified to a specific matter. Thus: A. testifies for the prosecution that he saw the defendant near the scene of the alleged arson; it is offered to show that he has elsewhere declared that he is sure that the defendant is innocent; is this admissible? The usual answer of some courts is that the declaration should be excluded because it is mere opinion. Post, § 1918.

This is unsound: (1) Because the declaration is not offered as testimony (ante, § 1018), and therefore the opinion rule has no application; and (2) because the declaration in its opinion aspect is not concerned, and is of importance only so far as it contains by implication some contradictory assertion of fact. In short, the only proper inquiry can be, Is there within the broad statement of opinion on the general question some implied assertion of fact inconsistent with the other assertion made on the stand? If there is, it ought to be received, whether or not it is clothed in or associated with an expression of opinion."

I think the following test announced in Whipple v. Rich, 180 Mass. 477, 63 N. E. 5, to be commended:

"The question is whether the specific facts testified to lead so directly to a conclusion that it is obviously unlikely that a man will believe a contrary conclusion if he believes the specific facts."

In Jones on Evidence, § 850, the author says:

"The question has often arisen whether a witness can be impeached as to specific facts stated in his testimony by proof of his general expressions of opinion as to the merits of the case or the parties. No fixed rule can be declared, and although such expressions of opinion are often rejected, yet in other instances where the opinion expressed seems inconsistent with the belief of the witness in the truth of his testimony they may be received."

Of course the statements which it is claimed the doctor made were not statements directly expressing the opinion that appellant was the father of the child, but were statements that could not honestly have been made except he believed him to be such father. There is no hard and fast rule as to what evidence is competent for impeachment purposes—the only guide is human experience. One has a right to cast doubt on the veracity of the witness in order to weaken his testimony, and it may be done in any method which human experience has shown is fairly intended to rightfully effect such result. Common sense and all human experience teaches that an expression of an opinion, which opinion could not reasonably be based on a certain set of facts, is as absolutely inconsistent with the known existence of such facts as would be a statement of such facts as would support such opinion; in other words, when the facts testified to by a witness lead so

directly to a certain conclusion that the party testifying could not reasonably be justified in holding an opinion inconsistent therewith, evidence tending to show that he expressed such an inconsistent opinion at a time when he claimed to be knowing to such facts throws just as much doubt on his veracity as would evidence that he had, at some time, made a statement of such facts as would support such former expressed opinion.

The facts of this case bring it peculiarly within the law announced in 7 Ency. Ev. 66:

"An assailed witness' previous statement, showing a state of mind at variance with that which would likely be produced by the facts testified to by him, may also be shown."

The following authorities fully support the ruling of the trial court, and a reading of the same shows that the rulings therein were placed upon the grounds suggested above: State v. Hogan, 117 La. 863, 42 South. 352; State v. Matheson, 130 Iowa, 440, 103 N. W. 137, 114 Am. St. Rep. 427, 8 Ann. Cas. 430; Lowe v. State, 118 Wis. 641, 96 N. W. 417; Jordan v. State, 120 Ga. 864, 48 S. E. 352; Franklin v. Commonwealth, 105 Ky. 237, 48 S. W. 987; State v. Exum, 138 N. C. 599, 50 S. E. 283; Bates v. State, 4 Ga. App. 486, 61 S. E. 888; Denver v. Lomovt, 53 Colo. 292, 126 Pac. 276, Ann. Cas. 1914B, 106; Holder v. State, 119 Tenn. 178, 104 S. W. 225.

The appellant has not questioned the sufficiency of the evidence, except its sufficiency to establish that complainant was unmarried. Under such circumstances, though we may feel far from satisfied with the proof received, we should not let our desire to grant a new trial lead us into laying down rules of evidence that will not stand the test of reason and are wholly lacking in authoritative support.

McCOY, J., concurring in above dissent.