REAGAN CARTER v. THE STATE.

No. 319.  Decided February 9, 1910.

Rehearing denied April 13, 1910.

**1.—Seduction—Leading Question—Bill of Exceptions.**

Where, upon appeal from a conviction of seduction, the bill of exceptions, reserving an objection to an alleged leading question, did not affirmatively show that said leading question did not fall under one of the exceptions to the general rule, and there was nothing to show that the court had abused his discretion in permitting the same to be asked, there was no error. Following Snodgrass v. State, 36 Texas Crim. Rep., 207, and other cases.

**2.—Same—Evidence—Examination of Witness—Discretion of Court.**

Where, upon appeal from a conviction of seduction, it appeared from the record that the prosecutrix had been fully examined by both the State and the defendant as to the question which the defendant propounded to her, there was no error in the court's action in refusing a further examination of the witness.

**3.—Same—Evidence—General Reputation.**

Upon trial of seduction there was no error in excluding testimony with

reference to a particular instance questioning the virtue and chastity of the prosecutrix, where the question was as to her general reputation for chastity.

**4.—Same—Evidence—Character of Prosecutrix—Declarations of Third Parties.**

Upon trial of seduction there was no error in refusing the admission of testimony as to what led the witness to believe that certain third parties had sexual intercourse with the prosecutrix; it not being shown that the defendant knew anything about it.

**5.—Same—Evidence—Conclusion of Witness.**

Upon trial of seduction there was no error in rejecting the defendant's inferences and conclusions which he had drawn from a conversation between him and third parties with reference to the character for chastity of prosecutrix.

**6.—Same—Evidence—Parts of Conversation—Flight.**

While the rule is that where a part of a conversation between the accused and others has been introduced in evidence that then the whole of the conversation is admissible; yet where upon the trial for seduction the State had introduced certain testimony with reference to defendant's statement to a State's witness giving the reason of his flight, there was no error in refusing to allow the defendant to show what had passed between him and said witness, as the defendant's statement was identical, or substantially so, with the statement of said State's witness, and there was no error.

**7.—Same—Evidence—Meaning of Initial Letters.**

Where, upon trial of seduction, the State had introduced a certain letter written by the defendant to his brother with reference to the case, there was no error in permitting the State to introduce testimony with reference to the meaning of certain words and initials in said letter.

**8.—Same—Sufficiency of the Evidence—Corroboration.**

Where, upon trial of seduction, the testimony of the prosecutrix as to the sexual intercourse with defendant and his promise of marriage was fully corroborated by other testimony and also the defendant's admissions, the same was sufficient to sustain the conviction, although there was a conflict of testimony as to this matter.

**9.—Same—Promise of Marriage—Conduct of Prosecutrix.**

Where, upon trial of seduction, the evidence sustained the indictment there was no error in refusing a special requested instruction, taking the ground that although defendant had made such promise of marriage at the time of said carnal intercourse, if thereafter the prosecutrix had illicit intercourse with another man, that then the defendant would have been relieved from his promise of marriage.

**10.—Same—Charge of Court—Definition of Offense—Charge as a Whole.**

Where, upon trial of seduction, the court defined the same properly throughout the body of his charge, the contention that such a definition was not contained in the prefatory statement of the charge was untenable.

Appeal from the District Court of Brown. Tried below before the Hon. John W. Goodwin.

Appeal from a conviction of seduction; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Jenkins & McCartney,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, Judge.—Appellant was tried in the court below on a

charge of seduction and found guilty and his penalty assessed at two years in the penitentiary; and he has appealed to this court assigning various reasons why he claims this court should reverse and remand the case.

We find in the record a bill of exceptions which develops that the court permitted the State over appellant's objection to ask the prosecuting witness Fannie Hawkins the following question: "Would you have submitted to this man and permitted him to have had sexual intercourse with you had it not been for his promise to marry you previously made?" This question was objected to by appellant on the ground that the same was leading and suggestive. The objection was overruled and the witness permitted to answer that she would not have permitted the intercourse had it not been for the previous promise of marriage. The bill is without qualification and we have stated practically all that the bill contains. There being so many exceptions to the rule which forbids asking leading questions, before we would feel authorized to reverse because the court below permitted leading questions, we would have to be satisfied from the bill that the leading question did not fall within any of the exceptions that authorized leading questions. Questions that assume unproved facts are leading. However, it is not a prejudicial error to permit leading questions where they relate to acts not controverted, or where the point sought to be established is already proven and in these questions the fact established may be recapitulated. See 8 Encyclopedia of Evidence, p. 153. Also leading questions may be put to hostile witnesses unwilling to give evidence. They are also permissible to refresh the memory of witnesses when the purpose of justice requires such a course to be taken. Also a leading question is permissible to arrive at facts when modesty or delicacy prevents a full answer to a general interrogatory. Also such questions are proper where the witness is confused or agitated. They are also permissible when they are asked of an ignorant person where he is slow to understand or his vocabulary is limited. They are also permissible to be put to children. They are also permissible and are not objectionable where the witness has given an ambiguous answer, and the party may inquire by leading questions as to any fact or circumstance tending to enable him to explain more clearly or certainly. Such questions are sometimes allowed for the purpose of bringing out details surrounding a main fact already testified to. See sec. 1105, Code of Criminal Procedure, and authorities there cited. Besides, this precise question was before us in the case of Snodgrass v. State, 36 Texas Cr. Rep., 207, and it was there held that the prosecutrix could be asked: "Would you have yielded to the sexual embraces of defendant had it not been on account of his promise of marriage?" In view of the fact that discretion is left to the trial courts, in some cases, to permit the asking of leading questions, we think the proper rule of practice would be for the bill of exceptions, taken to the leading questions, to affirmatively show that the leading questions

did not fall under one of the exceptions to the general rule. The bill in this case fails to state at what time of the proceedings this question was asked, under what circumstances it was asked, whether the witness' memory was bad or not, whether her recollection as to past events was treacherous, whether she gave her testimony in a halting manner, whether she was an unwilling witness, or whether the fact of her being a girl of twenty years of age and of modest demeanor caused her to be embarrassed upon the witness stand or not. Before we would be authorized to reverse a case upon this ground the bill should affirmatively exclude any idea that under the peculiar circumstances of the particular case, the court was justified in permitting the State to ask leading questions. Poyner v. State, 47 S. W. Rep., 977. The brief of appellant states that the testimony of the prosecutrix as to the appellant's alleged courtship, promise of marriage, and the facts and circumstances of their first intercourse, was vague, unreasonable and contradictory, and when we examine the statement of facts they appear, to some extent, to be a little disconnected. We are inclined, therefore, to hold that the case can not be reversed upon this ground.

The second bill of exceptions is to the action of the court in refusing to allow the witness Fannie Hawkins to answer the following question propounded by appellant: "Have you not stated here to the jury that the defendant said to you that you were as good as married when he had proposed intercourse on a former occasion, and that on this night when the intercourse occurred, he said nothing about your being as good as married until after you got out of the buggy?" The State objected on the ground that the witness had been fully examined touching the matter inquired about and had already made full answer thereto. The court sustained the objection and in his qualification to appellant's bill, states: "This witness had been examined by both the State and defendant on this question, reexamined and examined by each again and again and in the interest of time and believing no good could come from rehashing it longer the objection was sustained." There must be an end of examination somewhere, and when the bill discloses that this matter had been gone over several times in the examination, we think that the court was authorized and justified in stopping the examination further along this line and in this action of the court we find no error.

Bill of exceptions No. 3 is to the action of the court in refusing to allow the appellant to ask the State's witness Ben Griffin, who had been placed upon the stand and testified to the general reputation of Fannie Hawkins for virtue and chastity, if it was not a fact that in 1906 he, witness, was phoning to said Fannie Hawkins with reference to going to a party and that his father objected to him going with the girl and that he did not want him, witness, to go with her. This was objected to by the State and sustained by the court. We think the action of the court below was correct. General character may always be inquired into, but particular instances are never admissible.

Bill of exceptions No. 4 was to the action of the court in refusing to allow the appellant to ask the witness Roscoe Bellah if he, witness, did not state before the grand jury that Blake Jones led him to believe that he had had intercourse with Fannie Hawkins. This testimony was clearly inadmissible. The testimony failed to disclose that the appellant knew anything about it, and as to whether Blake Jones believed that she was of a loose character could throw no light upon any fact in the case. Blake Jones was a witness and testified in the case and this testimony was not offered for the purpose of impeaching him, the witness Blake Jones, upon any issue. We think there was no error in the action of the court in this respect.

Bill of exceptions No. 5 was to the action of the court in refusing to allow appellant to testify that from a conversation he had with Mat Long, Pete Schulz and Blake Jones, he inferred that they had been having intercourse with the girl. It will be noted that the bill of exceptions does not state that he was denied the right to prove what the language of these parties was, to him with reference to the girl, but he is asked with reference to the inference or conclusion that he had drawn in his mind from what they had said as to whether they had had intercourse with her or not. This was clearly objectionable and not admissible.

Bill of exceptions No. 6 is to the action of the court in refusing to allow the appellant to testify to what passed between him and Allen Bledsoe when he sold the horse to Allen Bledsoe. In order that a clear conception of this matter may be had, we will set out the bill in full with the qualification of the judge, which is as follows: "The defendant being upon the stand as a witness in his own behalf, proposed to prove by himself that at the time he sold his horse to Allen Bledsoe, which matter had already been testified to by him in reply to questions propounded by the State, and in said conversation he told said witness that he had no fears of prosecution in reference to the seduction of Fannie Hawkins, but that he was afraid of having trouble with her brother, Louis Hawkins, if he didn't get out of the country. To which question the State objected on the ground that it was a self-serving declaration; the court sustained said objection and would not allow the defendant to so testify; to which action of the court in not allowing the defendant to so state to the jury, the defendant then and there excepted, and here now tenders this, his bill of exception No. 6, and asks that the same be signed and made a part of the record herein, which is accordingly done.

"Approved with this explanation: 'The defendant did testify along this line, and if error was committed we refer this court to the evidence in, for the purpose of determining whether or not the error, if any, was material, see evidence of defendant on redirect examination, pages sixty-seven and sixty-eight, and on recross, page sixty-nine.' It will be noted that appellant claims that he said to Bledsoe that he had no fears of prosecution in reference to the seduction of Fannie Haw-

kins, but that he was afraid of having trouble with her brother, Louis Hawkins, if he did not get out of the country. Bledsoe had been placed upon the stand and testified as to a conversation he had with the appellant. The court in approving the bill states that the appellant did testify along this line and the judge further invites this court to a consideration of the evidence of appellant on pages sixty-seven, sixty-eight and sixty-nine to determine whether appellant had been denied the right to tell what he told Bledsoe. Appellant insists that the State having proved by Bledsoe what the conversation was between him and the appellant, and that the said Bledsoe not having testified that appellant said he was not guilty of seducing the girl and was not afraid of the prosecution, but that he was leaving home to avoid trouble with her kins-people, that he ought to have been permitted to testify as to what he told Bledsoe. This proposition is correct. It has been held by this court in the case of Pratt v. State, 53 Texas Cr. Rep., 281, and Greene v. State, 17 Texas Crim. App., 395, that where a conversation between a defendant and others has been introduced by one side of a part, or a conversation has been introduced, then the opposite party has a right to draw out the whole conversation, or the witness may take the stand and testify that the other party had not detailed the whole conversation and may give the balance of the conversation; and wherever part of a conversation is drawn out all other conversations connected with the same may be given in testimony and all expressions, reasons, grounds, circumstances, etc., are admissible in the matter. See article 791, Code of Criminal Procedure. Now, the only question here presented is as to whether there is any difference in appellant's testimony and the testimony of Bledsoe. Owing to the bill of exceptions referring to the statement of facts, we are compelled to go to the statement of facts in aid of this bill of exceptions. Mr. Bledsoe, in his testimony, stated that he bought a horse from the appellant, and this was a short time after he had heard there was a baby born to Fannie Hawkins, and that in that conversation the appellant stated to him "that he wasn't afraid of court matters, but he was only going away to keep from having trouble with the girl's folks; the girl's brother-in-law that he said had been down there was Alex Aikens; the defendant said that Alex Aikens had been down there and told him he was afraid that he was in danger from the girl's brother; the defendant said that Alex Aikens talked like he thought she was an innocent girl, and in that connection the defendant told him that he could count up twenty times he had intercourse with her himself; he said that he was accused of seducing the girl, but that he wasn't the guilty party." The appellant testified that he had a conversation with Aikens, who was a brother-in-law of Fannie Hawkins, and that they had a conversation about the girl and that Aikens was talking about her being an innocent girl and that she had been led astray by some villain, and that he, appellant, remarked that he expected she had been led astray at least twenty times. He denied

that he had told Aikens or Bledsoe that he had had intercourse with the girl twenty times. At that stage of the conversation appellant asked Aikens if there were any papers out for him and the witness Aikens said "No." He further testified: "He also advised me to get up and leave and said there was going to be trouble; that her brother didn't know it yet, as he was living down about Holder." Aikens further said to appellant that he left word for him and advised him to load up his shotgun and come this way. He thereupon advised appellant to leave, "to get up and hike out and be gone." Appellant says he did not make any reply whether he would or would not, but says he went right on from there to Allen Bledsoe's and offered him a horse for $100 cash, and further that said Bledsoe asked him what he was excited about and he, appellant, replied that there was a baby at Hawkins' and that it was laid on him, and that he was going to get up and hike; that the reason he was going to hike was that Aikens had talked so positively about trouble he did not feel like he was ready to be shot, and Aikens spoke like Fannie's brother was coming up that day. Now, taking the appellant's testimony together with the statement of Bledsoe, there is no difference in said testimony. He says in his testimony he did not leave because he was guilty. Bledsoe swears that he said he had no fears about the seduction but that he was afraid of having trouble with her brother. The appellant says the same thing. Bledsoe says the same thing, and we think the explanation of the charge does away with the statement in the bill of exceptions. If we are correct in this then the bill of exceptions does not come under the rule laid down in the Pratt and Green cases, supra, and the court did not err in the action taken.

Appellant, while upon the witness stand, was asked the meaning of certain words or certain expressions in a letter that he had written his brother, which had been introduced in testimony. We think this was admissible to know the meaning, if he had written the letters, to tell what certain initial letters meant and who he referred to.

We have mentioned all the bills of exceptions that were taken on the trial of the case and we find that they are without merit.

The motion for new trial assails the verdict of the jury on the ground that the evidence was wholly insufficient, and that the prosecuting witness was in no respects corroborated. Now, the prosecuting witness, Fannie Hawkins, testified that she had known appellant for several years and that the appellant began visiting her in the early part of the year 1906 and continued his visits until the birth of her child, in April, 1907; that he commenced making love to her shortly after he began to come to see her; that he went with her to all the gatherings in the community, visited her at her home, went with her to picnics and other social gatherings, and that they became engaged to be married, and that the appellant shortly thereafter, while returning home one night in a buggy, insisted upon her yielding to his desires, and stated that they were as good as married and that nobody

would know anything about it, and that she yielded, and that she yielded because of the promise of marriage, and that this intercourse continued up to within about a couple of months of the birth of the child; that he was the only man that ever had anything to do with her and was the father of her child. Appellant takes the stand, admits the intercourse and denies that there was any marriage contract between them. It may be said, therefore, from the letters, from the appellant's admissions, etc., that she is fully corroborated on the subject of intercourse. Now, as to whether there was a promise of marriage: The witness Ben Griffin testified as follows: "My name is Ben Griffin; I live at Blake, about twenty-five miles north of here; I have lived there about nine years; I am twenty years old; I know Fannie Hawkins; I know the defendant, Reagan Carter; I have heard Reagan Carter talk about marrying Fannie Hawkins; it was at Ike Jones', at a party one night, at a cream supper, and we had a little talk; he took me off and questioned me, and he was talking about the parents not wanting her to go out at night, and he thought they were objecting to him, and he just made the remark that they needn't be raising hell about it, they were going to marry in the summer; he said she was a nice girl, and he would love to see the color of the son-of-a-bitch's hair that said she wasn't a nice girl; I believe that conversation was in the early spring of 1906, at Ike Jones'." The testimony of the witness Fannie Hawkins, Ben Griffin and the letters of appellant established the guilt of the appellant. Ben Griffin's testimony and the appellant's letters corroborated her as to the marriage proposition. Appellant himself corroborates her as to the intercourse. We, therefore, hold that the testimony is sufficient in this case. It is true the appellant placed several witnesses upon the stand who testified that they had been having intercourse with Fannie Hawkins along during the time that appellant was paying her attention. An issue of fact was made and the jury passed upon it. By no known rule of law is this court authorized or permitted to disturb the verdict of a jury on an issue squarely made and proven before them. While the appellant may not be guilty and while we may dislike to affirm a verdict under the peculiar circumstances of this case, yet the law has constituted a tribunal to pass upon the facts and his guilt, and when the rules of law have been complied with in determining how the guilt shall be ascertained, that is a finality of the question and recourse then must be had to another branch of the government. This court can only say, "Thus the law is written."

However, there is another question that we will notice, and that is the special charge that was requested by the appellant in this case, which is as follows: "If one should promise a female to marry her by a given time, believing her at the time of such promise to be virtuous, and under and by virtue of such promise and in reliance on the same, she should submit to having carnal intercourse with the party making such promise of marriage, and she should thereafter and

before the time appointed for such marriage, and without the consent, procurement or connivance of such party, have intercourse with some other man, and such party should obtain knowledge of such intercourse with such other man, then the party making such promise of marriage and so seducing the woman would be justified in failing or refusing to marry such woman, and if you believe from the evidence in this case that such are the facts in this case, or if you have a reasonable doubt as to such being the case you will acquit the defendant." We think that this charge was rightfully refused. It did not lie in the mouth of the appellant in this or any other case to come into court and claim that he had courted and made love to a girl who was virtuous and become engaged to marry her, and under the promise of marriage had overreached the girl and had had intercourse with her, and then, after he had depraved her mind, debauched her body, assailed her virtue, claim that she had become so lost that she had yielded her body and person to others, and that, therefore, he would be held guiltless. This would be no defense legally or morally and we would hesitate a long time before we would give our sanction to any such rule, or lay down any such principle for the guidance of juries in the trial of parties charged with seduction.

The charge of the court was an ample, full presentation of the law of the case. It is claimed that the charge of the court was erroneous in that in the preparatory statement of the case by the court to the jury, the court omitted to state to them that seduction consisted in leading a chaste unmarried female under the age of twenty-five years from the paths of virtue. The charge must be measured as a whole, and when the court defines seduction he tells them that it is to lead an unmarried female under the age of twenty-five years away from the paths of virtue; to entice or persuade her by means of a promise of marriage to surrender her chastity and to have carnal intercourse with the man making the promise, and running all through the charge it will be seen that the court always directs the jury that she must have been a chaste character and not wanting in virtue. We do not think that the charge of the court is subject to the criticism leveled at it by the appellant, and that the same is a most admirable presentation of the law.

Finding no error in the trial of the case below, the judgment is in all things affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.
[Rehearing denied April 13, 1910.—Reporter.]