## Charles Brown v. State.

### No. 2291. Decided February 19, 1913.

### Rehearing Denied March 19, 1913.

1.—Adultery—Motion for New Trial—Jurisdiction.

Where, upon appeal from a conviction of adultery, the record showed that the court below permitted defendant to execute a temporary appeal recognizance and thereupon allowed him within two days after trial to file his motion for new trial, which was then overruled, notice of appeal given and a new recognizance entered into, this court's jurisdiction did not attach by reason of the first recognizance.

2.—Same—Sufficiency of the Evidence—Circumstantial Evidence.

Where, upon trial of unlawfully living together in adultery, the evidence showed that both parties were married at the time to other parties and that they lived together practically as man and wife, and the evidence further circumstantially showed that they had sexual intercourse while thus living together, the conviction was sustained.

3.—Same—Charge of Court—Requested Charges.

Where, upon trial of adultery, the requested charges which were refused were substantially covered by the court's main charge, there was no error.

4.—Same—Evidence—Shorthand Facts—Bill of Exceptions.

Where, upon trial of adultery, a State's witness was permitted to testify that defendant lived together with his paramour, this was a shorthand rendition of the facts, and not a conclusion of the witness, and therefore admissible; besides, the bill of exceptions was defective. Following Conger v. State, 63 Texas Crim. Rep., 312.

5.—Same—Leading Question—Bill of Exceptions.

Where, upon trial of adultery, the question asked by the State's counsel how long defendant and his paramour lived together was not leading, there was no error; besides, the bill of exceptions was defective. Following Carter v. State, 59 Texas Crim. Rep., 73.

5.—Same—Evidence—Bill of Exceptions.

Where, upon trial of adultery, the evidence showed that the defendant and his paramour lived together for some time, there was no error in admitting testimony that delivery wagons carried groceries to the house where they lived together and that defendant told a State's witness that his paramour was a married woman at the time, etc.; besides, the bill of exceptions was defective and all this testimony was brought out by defendant.

**7.—Same—Evidence—Practice on Appeal.**

It is too late to raise objections to the admission of testimony for the first time in the motion for new trial; besides, the testimony that defendant's paramour was a prostitute was admissible.

**8.—Same—Indictment—Different Counts.**

There was no error in overruling defendant's motion in arrest of judgment because of the two counts in the indictment under which the cause was submitted. Following Cabiness v. State, 66 Texas Crim. Rep., 409.

Appeal from the County Court of Limestone. Tried below before the Hon. W. A. Keeling.

Appeal from a conviction of adultery; penalty, a fine of $1,000. The opinion states the case.

*Doyle & Jackson* and *R. B. Molloy* and *R. S. Neblett* and *R. R. Owen,* for appellant.—On question of insufficiency of the evidence as to the question of marriage Burford v. State, 68 Tex. Crim. Rep., 151 S. W. Rep., 538; Wiley v. State, 33 Tex. Crim. Rep., 406.

On the question of living together of parties: Thomas v. State, 12 S. W. Rep., 1098; Ledbetter v. State, 17 S. W. Rep., 427.

On question of sexual intercourse: Kahn v. State, 38 S. W. Rep., 989; Brawshaw v. State, 61 S. W. Rep., 713; Manuel v. State, 74 S. W. Rep., 30.

On question of admitting evidence of living together: McClackey v. State, 5 Texas Crim. App., 329; Campbell v. State, 30 id, 645.

*C. E. Lane,* Assistant Attorney-General, for the State.—On question of defendant's marriage: Coons v. State, 49 Texas Crim. Rep., 256.

On question of sexual intercourse by circumstantial evidence: Counts v. State, 49 Texas Crim. Rep., 329.

PRENDERGAST, JUDGE.—From a conviction for adultery with a fine of a thousand dollars, appellant appeals.

The complaint and information are in three counts. The first charges that appellant, a man, and Olivia Coleman, a woman, on or about May 25, 1912, unlawfully lived together and had carnal intercourse with each other, he being then lawfully married to another person then living. The second count charges exactly the same thing, except that instead of charging that he was lawfully married to another, it charged that the woman was. The third count, which was not submitted to the jury, charged fornication.

The Assistant Attorney-General, by motion, seeks to strike from the record the motion for new trial filed within two days after the trial and all subsequent proceedings of the court below, on the ground that on the day the case was tried appellant appealed and then entered into a proper appeal recognizance. We have carefully examined the record, and while it shows that on the day of the conviction and after

the conclusion of the trial, in order to prevent the appellant from then going to jail, the court permitted him to execute said appeal recognizance. But this was agreed at the time to be only temporary to secure his return two days later when his motion for new trial would be made and then acted upon and if overruled, a new recognizance would be entered into. He did return two days later, his motion for new trial was then filed, acted upon and overruled, and he then, for the first time, gave notice of appeal and then entered into a new recognizance, the court setting aside by express order the previous recognizance. All this clearly shows that the jurisdiction of this court did not attach on the execution of said first recognizance. No notice of appeal was then given and no notice of appeal was given until after the overruling of the motion for new trial at which time he gave said second recognizance. The motion of the Assistant Attorney-General is, therefore, overruled.

The appellant introduced no evidence. The evidence by the State was uncontradicted. It is unnecessary to give the testimony in full. We will merely give a summary of it and substantially quote in some particulars the testimony of some of the witnesses.

Wm. Jeffries testified that he was then, and for several years before had been, deputy sheriff of Navarro County, Texas, and had known appellant all his life. He said: "Some time in February or March, 1912, the defendant came to me at Corsicana, Texas, and told me that a woman by the name of Olivia Coleman was in a bawdy house in that city, and that he, the defendant, was well acquainted with her father who lived at Kirven in Freestone County and that he, Brown, desired to get her out of the whorehouse and carry her back to her father's house and wanted me to go to the whorehouse and use my best efforts to persuade the Coleman woman to leave the whorehouse and go with Brown to her father's house. The defendant also told me that Olivia Coleman was a married woman whose husband lived at or near Kirven in Freestone County, and that a doctor had carried Olivia Coleman from Kirven and placed her in the house of prostitution. This house was run by a woman named Miss Frankie. I told the defendant that I would go with him and did go with him to the house where Olivia Coleman was staying. We went in the house and I called for Olivia Coleman. The defendant did not seem to know her as she was introduced to Brown. The defendant and I told Miss Frankie the purpose of our mission. The defendant and Olivia Coleman left the parlor and went upstairs together. They remained there about one hour and came down. At Brown's request I went to see the woman two or three times for the purpose, as I thought, to persuade her to go with the defendant to her father's or sister's home."

On cross-examination this witness showed that appellant owned a large farm in Navarro County and another in Freestone County; that he had a home or house on his Navarro County farm and had

lived there for years; that a widow named Mrs. Lowe with several children had lived with him and kept house for him. He said: "I knew Mr. Brown's first wife; she was divorced from him. A few years ago he married again in Freestone County. I do not know what has become of his last wife. I do not know whether she has ever been divorced from him or not. I do not know where she lives. No, sir, I do not know it to be a fact that his present wife is living in San Antonio, Texas; if I had known it I certainly would have said so. I do not know where Brown has been living during the last four or five months. He sometimes lives in Navarro County and he sometimes goes to Freestone County to his farm over there."

Miss Frankie testified: That she lived in Corsicana and was engaged in conducting a bawdy or sporting house there; that she knew Olivia Coleman and saw her at court on the day of the trial. She said: "Some time in February or March of the year 1912, Olivia Coleman came to my house and wanted to stay with me. She did not go by the name of Olivia Coleman when she was in my house. I rented her a room and she stayed in my house a week and three or four days. When she came there she had no money. She was a sporting or lewd woman, but made very little money while at my house." She then showed that she knew appellant and testified substantially as Mr. Jeffries did about his and appellant's going to her house to see Olivia Coleman. She said: "The defendant wanted to talk with her. They left the parlor together and went upstairs to Olivia Coleman's room and stayed there for an hour or an hour and a half. Mr. Brown visited Olivia at my house three or four times during her stay at my house. Whenever the defendant came he and Olivia Coleman would go upstairs to Olivia's room. They would usually stay from an hour to two hours in the room. Of course, I do not know what happened in the room when they were there. I am not in the habit of spying around when any of my girls go to their rooms with men."

On cross-examination this witness said: "I went upstairs once or twice while the defendant and Olivia Coleman were in the room together, the door was open. I do not know what they had been doing before I went upstairs and do not know what they did after I left." She further testified that appellant, when he came there with Mr. Jeffries on his first trip, told her that he wanted to get Olivia Coleman out of the house of prostitution for the purpose of taking her back to her father's house in Freestone County; that her father was a personal friends of his and he wanted her to go back to her father's house or her sister's who lived at Teague in Freestone County; that she never heard Brown say anything to Olivia Coleman at any time; that he never talked with her, in her (witness') presence.

Mr. T. J. Griffith testified that he lived in Mexia, Texas, and that appellant and said Coleman woman lived on the same block where his residence was located; only an alley was between them. He said:

"Brown and Mrs. Olivia Coleman lived together at this house (the house they lived in) for about three months. I have seen them there together dozens of times. Brown had a horse and buggy and I frequently have seen him come in at nights and feed his horse there at the house. He was frequently away from the house in the daytime. I have seen the defendant and Olivia Coleman together there in the yard on many occasions, and have frequently seen them leave the yard and go in the house together. I have seen the Coleman woman frequently carrying stove wood into the house and I have seen the smoke coming out of the stove flue, and I have seen her washing there at the house and I have seen the wash clothes hanging on the line; I never saw any men's clothes in wash, but I paid no attention to that. I have seen Brown leave the house on several occasions in the morning, hitch his horse to the buggy and drive away. No one stayed at this house, except the defendant, Brown, and the Coleman woman, except a small boy, who looked to be about 8 or 9 years old."

On cross-examination he testified: "The defendant and this woman lived there at least two or three months. I can not and will not attempt to say the exact number of times I have seen the defendant at the house. I regarded them as married people and paid very little attention to them." Then he testified that he never saw any acts of intimacy between them and was never in the house while they lived there and knew nothing of the furnishing of the house. He did not at any time see them in bed together and he never saw him hug or kiss her. He did not know how many beds there were in the house.

Hugh Everett testified that he lived at Mexia in Limestone County and knew appellant and said Olivia Coleman. He said: "Some time last February the defendant occupied a house near my residence in the town of Mexia, Texas, in Limestone County. The defendant stayed at the house one week before the woman Olivia Coleman came there to live. The defendant and the Coleman woman lived in the house for two or three months. The defendant kept a horse and buggy and frequently at night he would come to the house, unhitch his horse and feed it, and would go into the house. * * * I have seen the defendant and the woman, Mrs. Coleman, frequently talking in the yard where the house is located. I have seen both of them go into the house at night, and have seen the defendant come out in the morning. The house where the defendant lived was just across the street from my residence. * * * I saw the defendant, Brown, and the woman, Mrs. Coleman, around the place there several times a week and during the time they lived there which was about three months."

On cross-examination this witness said he was never in the house while these parties lived there; that he never knew them before then and that he never saw anybody at the house during the time they stayed there, except a little boy 8 or 9 years old; that the woman re-

mained at the house about one week after appellant was arrested and she then left and he did not know where she went; that she stayed there all the time from the time she first came until she left after Brown was arrested.

We have carefully gone over and considered the whole record in this case and appellant's brief and all of his authorities cited. It is unnecessary to take up and discuss all of appellant's claimed errors. The correct disposition of the case does not require this. It depends upon the decision of but few of appellant's contentions. He claims the evidence was insufficient to sustain the verdict, among others, because it is insufficient to show the marriage and the then living of either the appellant's wife, or Olivia Coleman's husband, and that it is insufficient to show that they lived together at this house at the time charged, in contemplation of our statute, and that it is insufficient to establish that they had sexual intercourse while staying at this house.

It is unnecessary to discuss either or all of these several contentions of appellant. In our opinion the evidence is sufficient for the jury to have believed and found that appellant was a married man, and that his wife was then living; that said woman was a married woman and her husband was then living; that they lived together practically as man and wife at this house for three months continuously, as shown by said testimony; that they had sexual intercourse while thus living together, can be established by circumstantial as well as direct testimony. In fact, practically that is the only way sexual intercourse can usually be shown. The act of sexual intercourse between man and woman, in all instances, is indulged in as secret and private way as it can be. Both parties always attempt to conceal it and do all things necessary and proper for preventing others from even suspecting such an act. The evidence clearly and without contradiction shows that this woman was a common prostitute; that appellant learned she was in a whorehouse in Corsicana; that he went there, claiming that he wanted to get her away from that house and take her to her father's or sister's; that she was only in this whorehouse about ten days. He went to see her there repeatedly, but never saw her in the presence of any other. He always took her to her private room and stayed there with her from one to two hours. He succeeded in getting her to leave the whorehouse but did not take her to her father's or sister's. If so, he did not induce her to stay with either of them, but went to another town, got a house and had her to come there and live with him continuously until after he was arrested. No other conclusion could be drawn from the testimony than that he lived with her in adultery in this house in Mexia, for the whole length of time she stayed there until his arrest, and that she left about a week after he was arrested.

We have carefully considered all of appellant's special charges which were refused by the court and in our opinion, wherever neces-

sary or proper to have been given, they were substantially and fully covered and given by the court's charge.

By one of appellant's bills it is shown that while the State's witnesses, Everett and Griffith, were testifying for the State they were each permitted, over his objections, to testify this: "That the defendant, Charles Brown, and Olivia Coleman lived together in the town of Mexia for three months or thereabouts." His objection was that it was a conclusion of the witness, that each witness ought to have stated the facts and let the jury determine whether they lived together or not. The bill further states that said evidence was in response to a leading question which was: "How long did defendant and Mrs. Olivia Coleman live together in Mexia?" That the court overruled these objections and permitted the question and answer to be given. This is in substance the whole of bill. It in no way gives the status of the case or the other testimony, or anything else about the matter other than what is substantially stated above. This bill, under the long established and uniform holding of this court is insufficient to require this court to consider it. Conger v. State, 63 Texas Crim. Rep., 312 and authorities there cited. Clearly the question objected to as leading, does not show reversible error. Carter v. State, 59 Texas Crim. Rep., 73. Notwithstanding we are not required to pass on this bill as it is, yet we do so, and in our opinion this testimony of these witnesses was admissible. If we could go to the record we would see that the facts were detailed by the witnesses which showed that these parties lived together at this house. And stating, as they did, as shown by this bill, was a mere short-hand rendition of the facts. 1 Whart. Crim. Ev., Sec. 458. As said by the court in State v. Brundidge, 118 Iowa, 92: "While the answer called for is in some sense a conclusion, it is one of those conclusions which so far partake of the nature of fact as to be admissible in evidence. To hold such evidence incompetent would limit and hamper the introduction of evidence in a manner not contemplated by any rule of law of which we have any knowledge." See also Subdivision 2, Sec. 1093½, White's C. C. P., p. 704.

The bill objecting to these witnesses stating that they had seen delivery wagons carry groceries to the house Olivia Coleman lived in is likewise insufficient, yet it is our opinion that this testimony, even if improperly admitted, would not constitute reversible error and could not and did not affect the verdict of the jury. What we have said as to these bills, equally applies to another, wherein it is claimed that the witness Jeffries was permitted to state that the defendant told him that Olivia Coleman was a married woman, whose husband lived at or near Kirven in Freestone County, yet, if we could consider the bill, in our opinion, this evidence was pertinent and clearly admissible. The same thing applies to another of appellant's bills complaining that the witness Jeffries was permitted to tell that Mrs. Lowe, the house-keeper of appellant, married a man by the name of

Jackson a few years ago; that they lived together only a short time when they separated and she returned to keeping house for appellant. Besides, this was a mere crossing of appellant's witness, who had substantially brought out the facts about Mrs. Lowe and no material error is shown in the admission of that testimony.

The testimony by Griffith and Miss Frankie that said woman, Olivia Coleman, was a prostitute and had been in a house of prostitution at Corsicana and what occurred with appellant there about her in that connection, was in no way objected to at the time the evidence was introduced. Its admission is complained of for the first time in the motion for new trial. It is too late to raise such questions for the first time by motion for new trial. They must be raised by bill of exception. Besides, in our opinion, the evidence was clearly admissible.

Appellant's motion in arrest of judgment, because of the two counts in the indictment under which this cause was submitted, presents no error. It was proper to charge as was done in this complaint and information. Cabiness v. State, 66 Tex. Crim. Rep., 409, 146 S. W. Rep., 934, and authorities therein cited.

We have carefully considered all the question raised in this case and in our opinion no reversible error whatever is pointed out. The judgment is, therefore, affirmed.

*Affirmed.*

[Rehearing denied March 19, 1913.—Reporter.]