RAYMOND COULTER v. THE STATE.

No. 2506.     Decided October 15, 1913.

Rehearing denied January 21, 1914.

1.—Murder—Evidence—Conversation—Prior Difficulty.

Where, upon trial for murder, defendant brought out the fact that his father had a prior difficulty with deceased at a certain place, and the acts, words, and conduct of deceased at that time, there was no error in permitting the State to introduce the whole conversation that took place at the time; besides, the testimony was admissible as shedding light on the subsequent transaction. Following Carter v. State, 59 Texas Crim Rep., 73.

**2.—Same—Acts of Co-defendant—Evidence—Acquittal.**

Where, upon trial of murder, it appeared that one of defendant's co-defendants had been acquitted, there was no error in permitting the State to prove that while the shooting was taking place, or just prior thereto, a witness testified that he saw said co-defendant motioning with his hand towards the place where deceased was, it having been shown that the defendant and his co-defendant acted together.

**3.—Same—Evidence—Prior Statements—Ill-will—Declarations of the Defendant.**

Where defendant contended that he did not shoot at deceased the first two or three shots, etc., and it was a closely contested issue as to who began the difficulty at the time of the fatal encounter, there was no error in admitting in evidence prior statements of the defendant which showed intent, ill-will, etc., towards the deceased. Following McKinney v. State, 8 Texas Crim. App., 626, and other cases.

**4.—Same—Express Malice—Degrees of Murder.**

Where appellant was on trial of murder in the second degree all evidence tending to show that he was guilty of murder was admissible, although it might show express malice.

**5.—Same—Threats—Charge of Court.**

Where the evidence did not show any threats by deceased, there was no error in the court's refusal of a requested charge thereon.

**6.— -Same—Defense of Property—Charge of Court.**

Where, upon trial of murder, the evidence did not call for or require a charge on defense of property, there was no error in the court's failure to charge thereon.

**7.—Same—Attack—Charge of Court.**

Where there was no testimony of antecedent threats by deceased, and the defendant's evidence showed that the deceased actually shot at defendant before defendant did anything towards him, and the court charged the jury that if deceased had made or was about to make an attack on defendant, etc., there was no error.

**8.—Same—Murder in Second Degree—Charge of Court—Circumstantial Evidence.**

Where, upon trial of murder, all the evidence showed that defendant fired the fatal shot, there was no error in the court's failure to charge on circumstantial evidence.

**9.—Same—Manslaughter—Charge of Court—Transport of Passion.**

Where, upon trial of murder, the court's charge on manslaughter was proper, a complaint that it required the killing to have been committed under the influence of a sudden transport of passion, was no error under the facts in this case.

**10.—Same—Apparent Attack—Charge of Court.**

Where, upon trial of murder, defendant's testimony showed an actual attack, there was no error in the court's failure to charge on the question of apparent attack.

**11.—Same—Charge of Court—Self-defense.**

Where, upon trial of murder, there was no evidence raising the issue of defendant's right to remove deceased from the premises, etc., there was no error in the court's failure to charge thereon.

**12.—Same—Charge of Court—Self-defense.**

Where the State contended under the evidence that the defendant fired at deceased before the latter attempted to draw a weapon, which the defendant denied, there was no error in the court's charge on self-defense in limiting defendant's right to defend to certain circumstances.

**13.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of murder in the second degree, the evidence supported the conviction, there was no error.

**14.—Same—Practice on Appeal—Brief.**

Questions presented in the brief which have no basis in the motion for new trial can not be considered on appeal.

Appeal from the District Court of San Augustine. Tried below before the Hon. A. E. Davis.

Appeal from a conviction of murder in second degree; penalty, six years imprisonment in the penitentiary.

The opinion states the case.

*Geo. S. King* and *H. D. Short,* for appellant.—On question of admitting conversation: Greene v. State, 17 Texas Crim. App., 395; Wood v. State, 28 id., 61; Pratt v. State, 53 Texas Crim. Rep., 281; Walker v. State, 63 id., 499; Craig v. State, 30 Texas Crim. App., 619; Dowell v. State 58 Texas Crim. Rep., 482, 126 S. W. Rep., 871; Gilcrease v. State, 33 Texas Crim. Rep., 619; McCandless v. State, 42 id., 58; Simpson v. State, 48 id., 328; Darnell v. State, 58 Texas Crim. Rep., 585, 126 S. W. Rep., 1122; Bradley v. State, 60 Texas Crim. Rep., 398, 132 S. W. Rep., 484.

On question of charge on apparent attack: Mitchell v. State, 36 Texas Crim. Rep., 278; Rodriguez v. State, 58 Texas Crim. Rep., 397; Watson v. State, 50 id., 171; Johnson v. State, 63 id., 50; Pool v. State, 45 id., 348; Carden v. State, 62 id., 607.

On question of circumstantial evidence: Early v. State, 50 Texas Crim. Rep., 344.

*C. E. Lane,* Assistant Attorney-General, and *Blount & Strong,* for the State.—On question of court's failure to charge on threats: Dobbs v. State, 54 Texas Crim. Rep., 550; Armstrong v. State, 50 id., 26; Hancock v. State, 47 id., 3; Davis v. State, 62 id., 537.

On question of court's failure to charge on appearances of danger: Simmons v. State, 55 Texas Crim. Rep., 441.

On question of court's failure to charge on circumstantial evidence: Barnes v. State, 53 Texas Crim. Rep., 628; High v. State, 54 id., 333; Dobbs v. State, 51 id., 629.

HARPER, Judge.—Appellant was convicted of murder in the second degree and his punishment assessed at six years confinement in the penitentiary.

The evidence in this case shows that appellant's father, Henson Coulter, and deceased, A. C. Lynch, were brothers-in-law; that some time prior to the homicide Lynch had leased a portion of the land of Henson Coulter and erected a mill thereon, the point where the mill was situate being outside of the enclosed land; that inside of the enclosed land a tank or pond was dug, and from this tank the mill secured its water by a pipe running under the fence. Henson Coulter and deceased were friends at this time, and owned a team jointly, which was driven by appellant. A month or more before the fatal difficulty Henson Coulter and a man employed at the mill by Lynch named Ferguson had a difficulty, and Ferguson ceased to work at the mill. Shortly thereafter another hand employed by Lynch quit, and Lynch re-employed Ferguson. So far as this record discloses, this is when the friendly relations were first severed. According to the State's testimony, after Lynch had re-employed Ferguson appellant made several threats about what he was going to do (according to the testimony of Rufe Fitz) saying, among other things: "I am going to kill Uncle Arch (deceased) the first chance I get." When Lynch re-employed Ferguson appellant quit working for him. About a week before the homicide, and after Ferguson had been re-employed by Lynch, Henson Coulter nailed up a gate in the fence near the mill of deceased, this being the only entrance into the pasture on that line of fence. Mr. Coulter assigns as a reason for nailing up the gate that he did so to prevent stock from getting out. A few days after the father of this appellant had nailed up this gate, Lynch (deceased) made another gate in the fence near the mill. On the day of the difficulty Henson Coulter was informed that Lynch had put in this gate, and went down and nailed it up also. He returned by the mill and informed deceased that he had nailed the gate up, he having in his hand at this time the iron pin he had used in nailing up the gate. When he informed Lynch that he had nailed the gate up, Lynch picked up a handax and advanced towards Henson Coulter and caught him by the shoulder. Words ensued, as regards which there are different versions, but it may be said that deceased cursed Henson Coulter, and informed him that he would again open the gate, and he did do so. The State's witnesses say that Henson Coulter remarked as he left that he would be back down there directly.

After Henson Coulter left John Green came to the mill to get some oil, the pump being in an outhouse near Henson Coulter's residence. John McBride and deceased went up there to get the pump, and while McBride was getting the pump out of the house two or three shots were fired by Raymond Coulter, appellant, as he says, at some guineas, the State's contention being that the shots were fired at deceased, and that the third shot knocked up the dust near deceased's feet. There is no contention that at the time these shots were fired deceased had said or done anything, but it is shown that when the shots were fired in the lot, that deceased began to curse, and called on those in the lot

to come out and he would fight it out with them, using very opprobrious epithets.

The State's testimony would show that when two shots were fired in the lot deceased called on them to come out and fight it out; that a third shot was fired, knocking the dirt up near deceased's feet, and that it was at this time he drew his pistol, when two more shots were fired and he fell; that deceased fired no shot.

Appellant contends that the first shots were fired at some guineas, and he did not know that Lynch was near until Lynch began to curse; that he then saw Lynch, who had a pistol in his hand, and who immediately fired in the direction of those in the lot. Appellant says he then jumped behind a tree and he and Lynch fired almost simultaneously, when Lynch fell.

Appellant and his witnesses contend they were on the way to the field to go to work, and appellant carried the pistol to kill some dogs. The State's contention is that when Henson Coulter returned home from the gin, he and his two sons, Raymond and Henry Coulter, and two others had started back to the mill armed, and fired when they saw Lynch, continuing to shoot until they killed him. Appellant's theory is that he knew nothing of the difficulty at the gin; that he had started to work, fired innocently at some guineas, not knowing that Lynch was near; that when he did so Lynch cursed, drew a pistol and fired at them; that he then drew his pistol, and he and Lynch both fired.

In one of appellant's bills of exception it is contended that the court erred in permitting witness to testify that after the altercation at the gin, when Henson Coulter left he said: "He would be back down there directly." The record discloses that when the State offered in testimony this difficulty at the gin it was excluded upon objection of the defendant. On cross-examination of the witness McBride the defendant had him testify to all what was said and done by deceased Lynch at that time, when upon redirect examination the State was permitted to prove what Henson Coulter said and did. Article 811 of the Code of Criminal Procedure provides when part of an act or declaration is given in evidence by one party, the whole on the same subject may be inquired into by the other party. (Carter v. State, 59 Texas Crim. Rep., 73, 127 S. W. Rep., 215.) When appellant brought out the fact that his father had a difficulty at the mill with deceased, and the acts, words and conduct of deceased at that time, then the whole conversation became admissible. But we think the testimony was admissible as shedding light on the subsequent transaction. If appellant's father had not gone to the mill and nailed up the gate and went to the mill and informed deceased of that fact, when the first altercation took place, there certainly would have been no other difficulty that day. The second difficulty was but an outgrowth of the first, in whatever light we may view the matter. According to the State's theory, this was the reason that appellant and his brother armed themselves, and in company with his father and others, went in the direction of the mill to renew the difficulty; ac-

cording to the defendant's theory this was the reason, when appellant, as he says, innocently fired at the guineas, why deceased began to curse and abuse them and fired his pistol in the direction of him and his father. So according to either theory of the case, this prior difficulty would shed light on the subsequent transaction. And especially would this be true when appellant first injected it into the case.

Henson Coulter, Henry Coulter and appellant were all indicted charged with this offense; the record shows that Henson Coulter (the father) had been tried and acquitted, and Henry Coulter had been tried and convicted of manslaughter prior to the trial of appellant. Upon this trial the State was permitted to prove that while the shooting was taking place or just prior thereto, a witness says he saw Henson Coulter motioning with his hands towards the place where deceased was situate. The fact that Henson Coulter had been tried and acquitted would not render this testimony inadmissible. Although he had been acquitted, it would have been permissible for the State to show on the trial of this defendant that a conspiracy existed, if it could do so. The defendant's theory was, that deceased was angry because Henson Coulter had nailed up the gate, and because of the prior difficulty, came up towards their home and shot at them without a just provocation by reason of these facts, while the State's theory was that a conspiracy existed between appellant, his father and brother Henry to take the life of deceased, because of deceased's act at the gin. Upon such a state of case the acts, words and conduct of each of the parties are admissible in evidence, and the court did not err in so holding.

During the trial Elma Holt was permitted to testify: "The conversation came up about a hand Mr. Lynch had employed by the name of Tom Ferguson. I asked if Ferguson was still there, and Raymond replied: 'Yes, but he says by God I am going to put him away from there.' I said, 'Why,' and he said, 'I am not going to allow him to stay there,' and I said, 'Well, why,' and he said, 'Him or Arch Lynch, one would have to leave there, they are not both going to work there, I am going to get revenge out of him.'" Mrs. Elma Holt was permitted to testify that about two weeks before the killing, in a conversation about Arch Lynch, appellant said that "whenever the mill dam washed away, if Arch Lynch took his crew and put it back, he intended to take his gun and shoot as long as there was one of his crew."

Rufe Fitz was permitted to testify that prior to the killing he was talking to appellant, and something was said about Arch Lynch, deceased, when appellant said, "I am going to kill Uncle Arch (meaning deceased) the first good chance I get." All this testimony was objected to on sundry and various grounds. Appellant testified that he and his Uncle Arch "were as good friends as anybody in the community," and if this were true, it would strengthen his contention that he had no other cause to shoot his uncle except to save his own life as testified to by him, consequently the above statement would be admissible on the issue of whether or not they were good friends as contended by appellant.

Again it was a closely contested issue as to who began the difficulty at the time of the fatal encounter. The State was contending that deceased never fired a shot and never drew his pistol until he had been shot at three times. Appellant's contention was that he did not shoot at deceased the first two or three shots, but shot at some guineas, when his Uncle Arch commenced to curse and abuse him, and those with him, and fired at them, when he returned the shot. Under such circumstances prior statements in their nature, showing intense ill-will, are admissible to aid the jury in determining who in fact began the difficulty. McKinney v. State, 8 Texas Crim. App., 626; Anderson v. State, 15 Texas Crim. App., 447; Frizzell v. State, 30 Texas Crim. App., 42; Bolton v. State, 39 S. W. Rep., 672; Bishop's New Crim. Proc., sec. 1110, and cases there cited.

The contention of appellant that these threats would tend to show express malice and render him guilty, if guilty at all, of murder in the first degree, is without merit. Although appellant was only on trial charged with murder in the second degree, yet all evidence tending to show that he was guilty of murder would be admissible, although it might tend to show that he was guilty of a graver degree of that offense than the State had elected to prosecute him for.

Several special charges were requested by appellant—the first in regard to threats by deceased. There is no evidence in the record that deceased made any threats towards appellant, his father, brother or any other person other than the language used at the time of the fatal difficulty. Under such circumstances the court did not err in refusing the first special charge requested.

Neither was there any evidence calling for or requiring a charge on defense of property, and the principles embraced in the other special charges, in so far as they are the law of the case, were fully presented by the court in the charge given.

The contention that the court erred in limiting appellant's right to defend from an actual attack is without merit. The language of the charge "had made or was about to make an attack" was peculiarly applicable to the facts in this case. There is no testimony of antecedent threats; and all the testimony offered in behalf of defendant would show that deceased actually shot at him before he did anything towards harm of deceased. The State's testimony is that appellant shot at deceased before he did anything justifying him in so doing. If deceased was in or near the public road, cursing and abusing appellant and those with him, this fact alone would not authorize appellant to kill him. Deceased must have been guilty of some act, leading appellant to believe his life was in danger before he would be authorized to shoot.

While in the brief there are several complaints of those paragraphs of the charge defining and submitting the issue of murder in the second degree, in the motion for new trial complaint is only made of the following paragraph: "Now bearing in mind all the foregoing instructions if you believe from the evidence beyond a reasonable doubt

that Raymond Coulter, either alone or acting as a principal with Henry Coulter, as that term has heretofore been defined to you, in the County of San Augustine, State of Texas, on or about the 24th day of May, A. D. 1911, with a deadly weapon did shoot and thereby kill Arch Lynch, and you further believe beyond a reasonable doubt that said killing was committed with implied malice aforethought, and was not in defense of himself or any other person then in the lot, against an unlawful attack or threatened attack, which created in his mind a reasonable apprehension or fear of death or serious bodily injury to himself or some other person then in the lot, and not under the immediate influence of sudden passion, arising from an adequate cause, as that term has heretofore been explained to you, you will find the defendant, Raymond Coulter, guilty of murder in the second degree." The complaint of this paragraph is that as the evidence is circumstantial, going to show appellant and Henry Coulter acted together in the commission of the offense the court should have charged on circumstantial evidence on this phase of the case. The evidence for the State and the appellant all goes to show that appellant fired the fatal shot. Appellant himself testified that he fired the shot that killed deceased, and this paragraph submitted only whether he shot, and did not authorize a conviction on account of any act of Henry Coulter. Under such circumstances it was not necessary to charge on circumstantial evidence.

After defining manslaughter in a way not complained of in the motion for new trial, the court instructed the jury: "If you believe from the evidence beyond a reasonable doubt that Raymond Coulter with a deadly weapon in a sudden transport of passion aroused by adequate cause as same is herein explained to you, and not in defense of himself or some other person then in the lot, against an unlawful attack which created in his mind a reasonable expectation or fear of death or serious bodily injury to himself or some other person then in the lot, did, in San Augustine County, State of Texas, on or about the 24th day of May, A. D. 1911, shoot and thereby kill Arch Lynch, you will find the defendant, Raymond Coulter, guilty of manslaughter." This paragraph is complained of in several particulars by appellant; the first is that it required the killing to have been committed under the influence of a "sudden transport of passion" before the jury would be authorized to reduce the offense to manslaughter. This contention has been before this court so frequently we do not deem it necessary to discuss it. While in some of the cases appellant's contention has been sustained, they were overruled a number of years ago, and this has been held to place no undue burden on the defendant. Especially would this be true under the evidence in this case.

The second complaint is that the paragraph limits appellant's right to defendant against an unlawful attack, whereas he was entitled to defend against the appearance of danger. If the evidence disclosed "appearance of danger" without showing an actual attack, there might be

merit in the contention, but as hereinbefore stated, the defendant's testimony would show an actual attack—a shot with a pistol,—while the State's testimony would show not even the semblance of danger until a shot was fired which knocked up the dirt near the deceased's feet.

The complaint that the court's charge on self-defense ignored appellant's right to remove deceased from the premises is without merit, as there is no testimony raising that issue. If, as appellant contends, he fired at some guineas, when deceased began to curse and abuse him and those with him in the presence of his mother, and then shot at him, this would be evidence of a right to defend his person but not his property. It might be admissible and perhaps should be considered in passing on the grade of homicide, but if deceased cursed and used highly insulting language in the presence of his mother, before he would be authorized to kill the evidence must show that all other reasonable means were resorted to to eject him from the premises before he would be authorized to inflict injury on that account. In this case there is no suggestion that any effort was made to eject deceased from the premises, but whether his contention or the State's contention presents the correct theory, the only issue presented by the evidence was the right to defend from actual attack.

As to that portion of the charge limiting appellant's right to defend, there is no complaint that this paragraph is in and of itself erroneous, but it is insisted that the court should not have submitted that issue. The State's contention is that two shots were fired at deceased before he said a word; that a third shot was fired at him before he drew or attempted to draw a weapon. While it is true that the testimony offered in behalf of the defendant denies all this, yet this testimony presented the issue and the court acted properly in submitting it to the jury for their determination.

As hereinbefore stated, it was not necessary to charge on circumstantial evidence in connection with this case. It was shown beyond all doubt that appellant fired the fatal shot; he admits it, and the court in his charge properly defined who are principals in the commission of an offense, and in a way not complained of by appellant. Under such circumstances when the person on trial admits firing the fatal shot, it is not necessary to charge on circumstantial evidence, even though the evidence going to show the guilt of another as a principal might be established by circumstantial evidence only. If Henry Coulter was on trial under this evidence, then there would be merit in appellant's reasoning and contention. But the person on trial is shown to have, and admits he killed deceased, and no charge on circumstantial evidence was required.

The evidence in this case sharply conflicts. Under that offered by defendant, if accepted by the jury, he would have been justifiable in slaying the deceased. But the testimony for the State, which evidently was accepted by the jury as presenting the true version of the difficulty, fully supports a conviction for murder in the second degree. The court

fairly submits the issues raised by the testimony, and in a way very favorable to defendant.

In the motion for new trial no error is pointed out, and those questions presented in the brief having no basis in the motion for new trial can not be considered by us, and for this reason we have not discussed them.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 21, 1914.—Reporter.]