## LESTER BLACK v. THE STATE.

No. 2666.  Decided November 5, 1913.

**1.—Seduction—Sufficiency of the Evidence.**

Where, upon trial of seduction, the evidence sustained the conviction, there was no error.

**2.—Same—Evidence—Leading Questions.**

Upon trial of seduction, there was no error in permitting State's counsel to ask prosecutrix whether she would have yielded to defendant to have sexual intercourse if it had not been on account of his promise to marry her. Following Hinman v. State, 59 Texas Crim. Rep., 29, and other cases.

**3.—Same—Evidence—Letters.**

Where, upon trial of seduction, the letter offered by the defense was not shown to have been written by the prosecutrix, and the same could not be offered as impeaching testimony, there was no error in excluding same.

**4.—Same—Requested Charge.**

Where the requested charge was fully covered by the court's main charge, there was no error in refusing same.

**5.—Same—Newly Discovered Evidence—Affidavits.**

Where the affidavits attached to the motion for new trial on account of newly discovered evidence did not allege any testimony which would authorize the court to grant a new trial on that ground, there was no error.

**6.—Same—Newly Discovered Evidence—Rule Stated.**

Where a witness appeared and testified, his further testimony is not newly discovered, unless it be shown that witness refused to speak to defendant's counsel, and his testimony was material.

Appeal from the District Court of Ellis. Tried below before the Hon. F. L. Hawkins.

Appeal from a conviction of seduction; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Will Hancock* and *W. H. Fears,* for appellant.—On question of insufficiency of the evidence: Fine v. State, 45 Texas Crim. Rep., 290; Wooley v. State, 50 id., 214; Barnard v. State, 76 S. W. Rep., 475; Spenrath v. State, 48 S. W. Rep., 192; Keaton v. State, 83 S. W. Rep., 911.

On question of newly discovered evidence: Stapp v. State, 65 Texas Crim. Rep., 331, 144 S. W. Rep., 941; True v. State, 48 Texas Crim. Rep., 631; Weaver v. State, 52 id., 11; Clark v. State, 51 id., 519; Stewart v. State, 52 id., 100; Pape v. State, 54 id., 462; Lindsey v. State, 50 id., 435; Ford v. State, 41 id., 1.

*C. E. Lane,* Assistant Attorney-General, for the State.

· HARPER, JUDGE.—Appellant was prosecuted and convicted of seduction, and his punishment assessed at two years confinement in the penitentiary.

On this trial, by her testimony, Nobie Cook would make a plain case of seduction. Appellant testified and admitted that he had had carnal intercourse with the prosecutrix on the dates alleged by her, and he says also at other times, but denies any promise of marriage or that he was ever engaged to marry her. However, Nonie Cooper corroborates the prosecutrix as to the promise of marriage, and while she states that appellant made the admission to her at a time that appellant by his witnesses would show he was elsewhere, yet the jury passed on these questions, and the testimony offered by the State if believed by the jury is ample to support the verdict.

It appears by one bill of exceptions that the appellant objected to the following testimony. The State asked the witness, Miss Nobie Cook: "I will ask you this question: Why did you permit him to have intercourse with you? A. I loved him and he promised that he would marry me; I loved him well enough to do just what he said do. And then said witness was asked by the attorney for the prosecution the following question: Q. Miss Nobie, would you have yielded to him to have sexual intercourse had it not been on account of his promise to marry you? A. Would I have done this if he had not? Q. Yes. A. No, sir, I would not; if he had not promised to marry me I would not."

Appellant objected to the second question, and the witness being permitted to answer the same, on the ground that the question was leading and suggested the answer desired by the prosecuting officer. This question was decided adversely to appellant's contention in Hinman v. State, 59 Texas Crim. Rep., 29, 127 S. W. Rep., 221; Snodgrass v. State, 36 Texas Crim. Rep., 207, and Carter v. State, 59 Texas Crim. Rep., 73, 127 S. W. Rep., 215.

Under the statements in the bill refusing to permit the witness Milton

Burton to testify in regard to some letters being mailed to Herman Rodden, we can not say that the court erred. This witness says it was the older girl who wrote the letters, and the older girl is clearly shown to be the prosecuting witness' sister, Miss Nona, and if so, the testimony was inadmissible. It is further stated in the bill that when the witness Rodden was testifying no predicate had been laid to render this impeaching testimony, if the witness had identified the prosecutrix, Miss Nobie, as the writer of the letters.

Only one special charge was requested, and the principles of law therein stated are fully covered by the court's main charge, therefore, there was no error in refusing same.

The only other question raised in the motion for a new trial that need be discussed is the ground alleging newly discovered testimony. The affidavit of G. J. Killen is attached to the motion, and he testifies as to what Bill Benton told him. As to what Bill Benton may have said, it would be hearsay evidence pure and simple, and not admissible in evidence if appellant had known it at the time of the trial. Bill Benton was not a witness in the case, and there is no affidavit from Benton or any other person that Benton on another trial would testify such statements were true, and if Benton had been introduced as a witness and testified that such facts were not true, then the testimony of Killen would be admissible to impeach Benton, but not even then as original testimony to prove that Miss Cook was unchaste. The affidavit of Charley Morton shows that Benton would not have testified that such facts were true.

The fact that T. C. Holland received a letter from Miss Cook, after he had called on her, could have but little tendency to show that she was unchaste. He does not state that any improper language was used in the letter, and the mere fact that he received a letter would have no bearing on the issues involved.

It is shown that appellant had a subpoena issued for John Rodden, and the subpoena is returned not served. The record discloses that appellant, at the previous term of the court, had continued the case on account of the absence of John and Herman Rodden. That at this term the attendance of Herman Rodden was secured, and no application to postpone or continue the case was made because of the absence of John Rodden. In fact, if such application had been made the record discloses there could have been but little hope of securing the attendance of John Rodden, as his residence had not been ascertained even at this term of court. And John Rodden not being a witness in the case, what he may have told or said in the presence of C. A. Gamble and others would not be admissible in evidence. There is no allegation that John Rodden would so testify if he was present and in attendance on court. His statements made to others outside of the court room would not be admissible to show that Miss Cook was unchaste.

We have examined each and every affidavit attached to the motion for a new trial, and none of them would be admissible as original testi-

mony to show that Miss Nobie Cook was unchaste, except perhaps the testimony of Walter Poole, which will hereinafter be recited and discussed. All the other testimony recited in the affidavits would only be admissible to impeach the witnesses John Rodden and Bill Benton had they been introduced as witnesses, and not being introduced as witnesses, would not be admissible for any purpose, and to impeach the witnesses Eddleman and Dutch Rodden; the part tending to impeach Eddleman and Dutch Rodden would be admissible for that purpose alone, and could and would not be admissible as showing that Miss Cook was unchaste. Eddleman and Dutch Rodden were not introduced by the State to prove either the promise of marriage, nor that defendant had had intercourse with Miss Cook. After appellant testified that Eddleman and Dutch Rodden knew certain things and had so told him, then they were introduced and testified they had told appellant no such things, and none of the alleged newly discovered testimony goes to the fact that they had in fact told appellant what he said they had, but would only tend to show that they had made disparaging remarks about the prosecutrix, which they deny and say is untrue. As before stated, if it should be shown they in fact had made these disparaging remarks, it would only go to their credit as witnesses, and not as to the chastity of Miss Cook. No witness testifies that Miss Cook had ever conducted herself improperly with those witnesses, but only offer to testify what they say the Roddens, Benton and Eddleman had told them, when not in the presence of Miss Cook. If these young men in fact made these disparaging remarks, when there is no testimony that such remarks were true, it could not and should not have any bearing on the issue of the chastity of Miss Cook, but simply reflect on the men who made the remarks, if they did so.

As to the affidavit of the witness Walter Poole, hereinbefore mentioned, he states that he would testify on another trial that "he traveled the road passing the home of the Cook girls and that on various occasions they pulled their dresses up to their knees and kicked up their heels in a way that attracted his attention, displaying their lower limbs." Again, he says: "That he had heard various and different boys talk about the prosecutrix's reputation for virtue and chastity, naming Dick and Jack Eddleman, Cal Winn, and Holly Jacobs, and that they gave her a bad reputation." But on the trial, nor in the motion for new trial is the testimony of either of these attached showing that they knew of any improper conduct on the part of Miss Cook, and the fact that he had heard these boys make slighting remarks would hardly be admissible unless these boys were introduced as witnesses in the case, and there is no evidence that either of these boys would testify to any improper conduct on another trial. The fact that he had seen the "girl pull her dress up to her knees and kick" at her home, would be admissible, but its weight as showing her lacking in virtue would be but slight. Again it appears this witness was in attendance on court, called as a witness by the State, and testified that appellant

admitted to him that he had carnal intercourse with the prosecutrix twice. That he was subsequently recalled by appellant, and testified to certain facts at his instance. Under such circumstances could the testimony of Walter Poole, if material, come within the rules prescribed for new trials on the ground that he knew facts that appellant did not discover at the time? In White's Ann. Code of Criminal Procedure, subdivision 3, sec. 1149, the rule is: "Where the witness was interviewed by defendant's counsel upon one phase of the case, and was not put upon the stand, her testimony upon another phase of the case is not newly discovered," citing Williams v. State, 45 S. W. Rep., 572. It appears that Poole was actually used by appellant as a witness to one fact, and was not questioned as to these other matters which he says he will now testify to. Again it is held: "Where the witness appeared and testified, his further testimony is not newly discovered," citing cases. In this case appellant does show that his attorneys approached the witness and he objected and refused to talk to them, and under such circumstances if the testimony was of a very material nature we would be inclined to relax the above rule, but as shown above, the part which would be admissible could have but slight, if any, weight. Without citing other authorities we merely refer to the cases cited and rules of law stated in sec. 1149, subdivs. 3, 5, 6 and 8, of White's Ann. Code of Criminal Procedure, and it will be seen that under all the decisions of this court that nothing is stated in the affidavits that would justify this court in reversing the case.

The judgment is affirmed. *Affirmed.*