JEWEL REDWINE v. THE STATE.

No. 5648.   Decided March 31, 1920.

Rehearing Denied May 19, 1920.

1.—Murder—Evidence—Threats.

Upon trial of murder, there was no error in admitting testimony that on the evening of the killing defendant said that he was going to kill deceased and that he had taken out another party to kill him' and that he had just talked him out of it; the court withdrawing the latter declaration as to the third party.   Following Roberts v. State, 48 Texas Crim. Rep., 210, and other cases.

2.—Same—Withdrawal of Illegal Evidence.

Where, upon trial of murder, testimony was admitted that defendant had declared he would kill the deceased, and that he had taken out another party sometime before, whom he was going to kill ·but that the latter had talked him out of it, which latter's statement the court withdrew from the jury, there was no reversible error, as the same was not of such prejudicial character that it was necessarily harmful to the accused.

3.—Same—Attorney at Law—Fine for Contempt—Practice in District Court.

Where, the trial was not unreasonably delayed, and the fact that the attorney for the defendant was fined for repeating a question four times, the witness having fully answered and the matter, could not have injured the rights of the defendant, there was no reversible error.

4.—Same—Newly Discovered Evidence—Impeaching Testimony.

Where the alleged newly discovered evidence was of an impeaching character, and besides, must have been known to the defendant's counsel, there was no error in overruling the motion for a new trial.   Following Black v. State, 71 Texas Crim. Rep., 621.

5.—Same—Evidence—Bill of Exceptions.

Where the bill of exceptions showed that there was no error in admitting the alleged testimony, there was no reversible error.

6.—Same—Rehearing—No Reversible Error—Practice on Appeal.

Where, upon motion for rehearing, appellant contended that his declaration as to what he would do to a certain third party, which was admitted in evidence on trial, was so prejudicial that it could not be withdrawn, but the record showed that there was sufficient legal evidence to warrant the conviction, there was no reversible error.'   Following Hester v. State, 15 Texas Crim. App., 567, and other cases.

Appeal from the District Court of Eastland.   Tried below before the Honorable Joe Burkett.

Appeal from a conviction of murder.   Penalty, eighteen years imprisonment in the penitentiary.

The opinion states the case.

*J. F. Cunningham, S. W. Bishop, J. L. Alsford, J. R. Stubblefield* and *B. W. Patterson,* for appellant.—On question of admitting testimony on defendant's declaration with reference to third party: Welhausen v. State, 30 Texas Crim. App., 626; Schwen v. State, 37 id., 370; Haney v. State, 57 id., 158; Harris v. State, 55 id., 478; Davenport v. State, 49 id., 11.

On question of fining attorney for contempt: Chapman v. State, 147 S. W. Rep., 580; House v. State, 42 Texas Crim. Rep., 127; Poole v. State, 45 id., 348.

*Alvin M. Owsley,* Assistant Attorney General, for the State.—On question of defendant's declaration and threats: Smith v. State, 44 Texas Crim. Rep., 59; Hamblin v. State, 41 id., 140.

LATTIMORE, Judge.—Appellant was convicted of murder, in the District Court of Eastland County, and his punishment fixed at eighteen years in the penitentiary.   This is his second appeal in this case, the former appeal appearing in 85 Texas Crim. Rep., 437, 213 S. W. Rep., 636.

According to the uncontradicted evidence in the record, appellant, at the time of the homicide, was on the outside of a butcher shop, in the town of Gorman, in Eastland County, and deceased was on the inside of said shop.   It appears that appellant, from his position on the outside, cursed deceased, and called him an opprobrious epithet, and told him to come out; also, that deceased took up a butcher's steel from the counter, and started out, and appellant then fired several shots through the screen of the window or door, killing deceased, who fell on the floor inside the shop.   Deceased said to a party who came soon after the shooting: "Jewell Redwine shot me down like a dog and had no right to, and I am killed."

The appellant introduced no testimony on the trial, except that of his brother, to the effect that he had never been convicted of a crime.

But three questions are presented in appellant's brief, which we will notice in the order as presented:

By his bill of exception No. 3, it is shown that witness Todd, and a man named Parr, on the evening of the killing, were sitting on a box about a block from the scene of the homicide; and that appellant came to where they were, and sat with them and talked for a while; and presently invited Parr to come with him and get a drink of cider; that witness Todd went with them, and after spending some little

time at the barber shop, and all taking a drink of cider, witness and appellant returned to the place where they had been, sat down, and had some further conversation, in the course of which, Todd was permitted to testify the following occurred, namely; that appellant stated as follows: "I took that son-of-a-bitch up there to kill him, but he just talked so good I couldn't afford to," and that the witness Todd then remarked "That is the wrong thing—I wouldn't think about that—that is the wrong idea," and appellant 'sorter grinned, and said, "That is what 1 aimed to do, and there is another son-of-a-bitch I am going to kill in this town if he don't quit meddling with my business," and called Eulon Ellis' name." (Eulon Ellis was the deceased.)

Appellant objected, for various reasons, to so much of this conversation as referred to any party other than deceased. The trial court admitted the entire statement, upon the theory that it was one continuous conversation, and that all of same was necessary to thoroughly understand that part relating to deceased, but told the jury that they should not consider that part of said statement which related to Parr.

It appears that the killing took place between sundown and dark, and that the conversation referred to between Todd and appellant was had on the same afternoon between six and seven o'clock, and that nothing transpired between appellant and deceased after said conversation and before the killing, which is in anywise set up or claimed to have led up to or caused said homicide. We are not at all clear that this testimony was inadmissible as a statement showing a heart regardless of social duty, and fatally bent on mischief, and, therefore, as being evidence of malice on the part of appellant. See Miller v. State, 31 Texas Crim. Rep., 636; Mathis v. State, 34 Texas Crim. Rep., 39: Taylor v. State, 44 Texas Crim. Rep., 549; Godwin v. State, 38 Texas Crim. Rep., 404.

. From the testimony, it would appear that within less than an hour after the conversation had with Todd, appellant shot and killed deceased. Just previous to the conversation mentioned, appellant had been with Parr on terms of apparent friendliness, and was not angry when he made said statements, as far as the testimony shows. We are of opinion, however, that if there was anything in said statements relative to Parr, which was not admissible, that it was rendered harmless by the court's action in withdrawing same from the consideration of the jury. Roberts v. State, 48 Texas Crim. Rep., 210; Hatcher v. State, 43 Texas Crim. Rep., 239; Trotter v. State, 37 Texas Crim. Rep., 474; Jones v. State, 33 Texas Crim. Rep., 8. The statement was not a threat against Parr, but was merely a statement of what appellant had intended to do, but didn't do for the reasons given. We do not think this question is governed by the rules laid down in the cases cited by appellant, where the evidence admitted, and later attempted to be excluded, was of such prejudicial character as that

its necessary effect was harmful to the accused. While there may be some cases in which the harm done is so great that the exclusion of the testimony will not suffice, there are the exceptions and the weight of authority is the other way. Sutton v. State, 2 Texas Crim. App., 342; Nalley v. State, 28 Texas Crim. App., 387; Morgan v. State, 31 Texas Crim. App., 1; Jones v. State, 33 Texas Crim. Rep., 7.

There is a lengthly bill of exceptions in the record, reserved to the action of the trial court in fining one of the attorneys for appellant, and requiring him to pay said fine before said trial proceeded, and said bill further contends that appellant was denied certain evidence in that connection. It appears from the record that the trial court directed counsel not to repeat a question which had been asked and answered several times, and which related to the testimony of a witness at a former trial. Upon his repeating the question again, the trial court assessed a fine of $25, and required that same be paid, which was done, and the trial proceeded. We have examined this bill of exceptions carefully, and are of opinion that no error was committed. The trial was not unreasonably delayed, and the fact that his attorney was fined for repeating a question, as contended by the trial court, four times, could not have injured his rights, in our conception. The particular evidence sought was fully elicited from the witness by his various answers.

The remaining error briefed, is that the trial court should have granted appellant's motion for a new trial, on the ground of newly discovered evidence. Said newly discovered evidence consisted of the testimony, as shown by affidavits attached, of a Mrs. Clark and her son Balley Clark, and was to the effect that two of the State's witnesses, Todd and Bennett, came out to the Clark home after the homicide, and wanted Balley to join them in swearing against the appellant. The conversation is supposed to have taken place in the room adjoining the one occupied by Mrs. Clark, and a part of which she says in her affidavit, she heard. At most, the evidence. if true, would only serve to impeach the witness Todd and the witness Bennett. In such case, the general rule seems well settled that if a new trial be refused by the court below, we will sustain such action. See Section 202, Branch's Ann. P. C. As to the evidence of Balley Clark, as shown by his affidavit, it could hardly be said to come under the head of new evidence, as he was present and testified at a former trial, and it does not appear anywhere that he then refused and declined to disclose to appellant's counsel anything that he might know about the case. See Sections 203 and 204, Branch's Ann. Penal Code, Fisher v. State, 30 Texas Crim. App., 502; Williams v. State, 45 S. W. Rep., 572; Black v. State, 71 Texas Crim. Rep., 621, 160 S. W. Rep., 722.

We have examined the testimony of Balley Clark as given on a former trial, as the same appears in the record on file in the office of the clerk of this court, on appeal, and have not found same to be of

such harmful character to appellant, as would appear natural where one was a party to manufacturing testimony. We further observe in said record, that Clark admitted that he was under indictment for burglary, and it is likely that his testimony would be given very little weight upon another trial.

Appellant has one other bill of exceptions to certain testimony, which we think presents no error. The charge of the court is a fair presentation of the law of the case. Believing no reversible error appears anywhere in this record, the judgment of the trial court is affirmed.

*Affirmed.*

ON REHEARING.

May 19, 1920.

LATTIMORE, JUDGE.—In his motion for rehearing, appellant insists that the admission of Todd's testimony, in relating what appellant said he had intended to do to Parr, should have been held ground for reversal. The matter is set out in our opinion. The trial court instructed the jury not to consider said statement. This being the case, in order to justify a reversal, we would have to hold said statement to be one whose effect was so injurious to the rights of appellant, that the injury of its admission could not be cured by the instruction given not to consider it. We do not think this the probable effect of such statement. The fact which is all there is in this question, that one says he has entertained a purpose to kill another man, but had abandoned it, while possibly not admissible in a case such as this, seems more in harmony with the long line of decisions of this Court, to the effect that the admission of erroneous matter will not require reversal when same appears not relevant or material to the issue in the case on trial, but the record discloses sufficient legal evidence to warrant the conviction. Hester v. State, 15 Texas Crim. App., 567; Malcomson v. State, 25 Texas Crim. App., 267; Draper v. State, 22 Texas, 401; Logan v. State, 17 Texas Crim. App., 50; Bond v. State, 20 Texas Crim. App., 421.

The admission of such erroneous matter will not operate to reverse the case, unless some injury to the accused is reasonably apparent. Hooper v. State, 29 Texas Crim. App., 614.

To require reversal, the effect of such evidence must have been prejudicial to the rights of the accused. Sisk v. State, 28 Texas Crim. App., 432; Shaw v. State, 39 Texas Crim. Rep., 161; Post v. State, 10 Texas Crim. App., 579.

Considered in the light of these and numerous similar decisions, and in view of the fact that the jury were instructed not to consider

so much of said statement as related to the man Parr, we do not think the admission of said evidence such error as would call for reversal; and the motion is overruled.

*Overruled.*